CASE 46—ACTION BY THE BALLARD COUNTY BANK AGAINST THE MARYLAND CASUALTY CO.—June 18, 1909.

# Maryland Casualty Co. v. Ballard County Bank

Appeal from Ballard Circuit Court.

R. J. BUGG, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Appeal and Error—Trial by Court—Special Finding.—A special finding of facts by the court is like a special verdict, and, where the facts are not sufficient to warrant the judgment, the court on appeal will set it aside.
2. Appeal and Error—Trial by Court—Judgment—Finding of Facts.—Where there was no motion for a new trial, and, no separate finding of law and facts were made, the court, on appeal will not sustain the judgment in a case tried on the law and facts by the court, where there is in the record no evidence to warrant it, because a question of law only is then presented.
3. Appeal and Error—Trial by Court—Judgment—Review.— Where there was no controversy as to the facts, and the court found the facts as established by the undisputed tes-

timony, the question whether the judgment was warranted by the facts is one of law and is reviewable, though no exception to the court's findings of fact or law was taken.

4. Insurance — Burglar Insurance — Contract — Construction — "Tool."—A bank burglar insurance policy, stipulating that insurer assumes responsibility for the felonious abstraction of money from the bank safe by any person who shall have made entry into the safe by means of tools or explosives directly thereon, and for money forcibly taken from the part of the bank partitioned off by guard rails for the use of its officers, but exempting the insurer from liability where there is an inner steel burglar-proof chest, unless the money is taken from the chest by an entry effected into it by the use of tools or explosives, directly thereon, and for loss by robbery, commonly known as hold-up, unless the working force is at work in the bank, does not make the insurer liable for loss by hold-up at night, where after the money was put into the safe, and the force at the bank had left, an officer thereof was held up and required to open the bank and safe; the word "tool" referring to burglars' tools and explosives.

HENDRICK & CORBETT for appellant.

## AUTHORITIES CITED.

Kelley v. Bradford, 6 Ky. 317; Treplett v. Gill, 30 Ky. 432; Hunter v. Miller, 45 Ky. 612; Montgomery v. Firemen's Ins. Co., 55 Ky. 427; Dunias v. Northwestern Nat. Ins. Co., 40 L. R. A. 358; Brill v. Metropolitan Surety Co., 113 No. 4, N. Y. Supplement, Jan. Number 476; Fidelity & Guaranty Co. of N. Y. v. Sanders, 70 N. E. Rep. 167; Mt. Eden Bank v. Ocean Accident & Guaranty Co., 29 Rep. 765.

NICHOLS & NICHOLS for appellee.

## SUMMARY.

1. We contend that a failure to except to the judgment of the court, or to the conclusions of law and fact found by the court, leaves nothing for this court to decide except as to whether the pleadings support the judgment.

2. We contend that Hahs, the assistant cashier, was a tool in the hands of the burglars and by the use of which they entered the safe.

3. That the safe was entered by the use of tools directly applied thereupon in this: that the use of the lock and lever

was the use of tools, within the meaning of the policy, and the fact that the tools used were those made and designated for opening the safe can make no difference.

This judgment should be affirmed, for which we respectfully pray.

### AUTHORITIES.

Civil Code, Sec. 332; American Mutual Aid Society v. Bronger, 91 Ky. 406; Beeler vs. Sandiage, 49 S. W. 533, 20 Ky. Law Rep. 1581; Day v. Adams, 50 S. W. 2, 20 Ky. Law Rep. 1827; Providence Washington Insurance Company vs. Paducah Towing Company, 89 S. W. 722; Roberon Criminal Law, Vol. 1, Sec. 315; Orient Ins. Co. &c. v. Clark, 59 S. W. 863.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The Ballard County Bank, located at Bandana, Ky., held an indemnity policy in the Maryland Casualty Company. While the policy was in force, the bank was robbed in this way: Armed men at night took possession of the assistant cashier and two other men, and took them to the bank. They got the key to the bank from him and opened the door of the bank. They then required the cashier, at the point of a pistol, to open the vault and the safe in the vault. This he did by working the combination. His story as to how it occurred is as follows: "I says, 'I don't know the combination,' and they told me if I told them a G—d—lie they would kill me, and they drug me down to the floor and asked me did I know it, and I says, 'no,' and one says: 'John, go get the nitroglycerin. We will blow this damn thing and use this s—— of b—— as a pad.' And I says, 'gentlemen, let me up and I will open it,' and they let me stand up on my knees, and I couldn't work the combination that way, and I tried several times and opened the vault door that way all right, and come to the big safe and opened

that, and come to the chest and couldn't open that, and one of them pulled out some whisky and says, 'give the s— of b— a drink of whisky,' and I says, 'no, I don't want any,' and I says, 'take the pistol away from my head, and I will open it,' and they says, 'never mind about that,' and I kept on until I got it open and one ahold of my hands and one with the pistol back of my head, and when I got through he took the lamp and hung it up and took me back upstairs. They first started to tie me downstairs; but I begged them to take me upstairs, and they hit me on the head with the pistol and told me if any of us hallooed or made any fuss that they would come back and kill us." The robbers obtained from the safe in this way $2,335.44, and the bank brought this suit against the insurance company to recover for the loss. The policy, so far as material, provides as follows: "Peerless Bank Burglary Policy. In consideration of forty-four dollars premium, and of the statements in the schedule hereinafter contained, * * * the Maryland Casualty Company of Baltimore, Md.; does hereby agree to indemnify Ballard County Bank * * * for the term of twelve months * * * subject to the following special and general agreements, which are to be construed co-ordinately, as conditions: (A) For all loss by burglary of money, bullion, bank notes, * * * in consequence of the felonious abstraction of the same from the safe or safes described in the said schedule and located in the banking room also described in the said schedule and hereinafter called the premises, by any person or persons who shall have made entry into such safe or safes by the use of tools, or explosives directly thereupon, in the sum of five thousand ($5,000.00) dollars. * * * (C) For all loss by robbery of money, bul-

lion, bank notes, * * *  feloniously or violently and
forcibly taken from that part of the banking room par-
titioned off by suitable guard rails or counters, and
provided for the exclusive use of the officers and
clerks of the bank in the transaction of the business
of the bank, located at the premises described in the
schedule hereinafter given, in the sum of five thou-
sand ($5,000.00) dollars. The company shall not be
liable for loss of money, bullion, bank notes,* * * *
from a combination fire and burglar proof safe or
from a burglar proof safe containing an inner burg-
lar proof chest, unless the same shall have been ab-
stracted from the chest after entry also into the said
chest effected by the use of tools or explosives directly
thereupon, * * *  nor for any loss by robbery what-
ever not occasioned by forcible, violent and felonious
robbery, commonly known as 'hold-up,' nor at all
unless the regular working force is at work in the
bank." It will be observed that by the policy the in-
surance company agreed to indemnify the bank for
all loss by robbery of money feloniously abstracted
from the safe of the bank by any person making an
entry into the safe "by the use of tools or explosives
directly thereupon."

The question presented is whether, when the rob-
bers forced the cashier to open the safe in the man-
ner stated above, the money was abstracted from the
safe of the bank by persons who made entry into it
by the use of tools or explosives directly thereupon.
The circuit court, to whom the law and facts were
submitted, found the facts to be as above stated, and
found as a matter of law that this entry of the safe
was by tools directly applied thereto as provided in
the policy. The defendant did not except to the find-
ings of the court, although it filed grounds and moved

the court for a new trial. The court overruled the motion, and the defendant appeals.

It is insisted for the plaintiff that, there being no exception to the court's finding of facts or law, the only question on the appeal is whether the pleadings support the judgment. A special finding of facts by the court is like a special verdict of a jury. If the facts found by a special verdict are not sufficient to warrant a judgment in favor of the plaintiff, this court will set it aside. Finley v. Meadows (Ky.) 119 S. W. 216, 134 Ky. —.

In the same manner, if the facts found by the circuit judge are not sufficient to sustain a judgment, this court will reverse the judgment for the reason that when the special finding is read in connection with the pleadings it is insufficient in law to warrant a recovery. This question was considered by the court in the case of Cincinnati, etc., R. R. Co. v. Hansford & Son, 125 Ky. 37, 100 S. W. 251, 30 Ky. Law Rep. 1105, and, as was pointed out in that case, the rule is that, even where there is no motion for a new trial and no separate finding of law and facts, this court will not sustain a judgment in a case tried upon the law and facts before the court where there is in the record no evidence to warrant it, for the reason that there is then only a question of law presented. Here there is no controversy as to the facts. The findings of the circuit court is simply that the facts occurred as the cashier testified. There is therefore here only a question of law. Do these facts warrant a judgment in favor of the plaintiff?

In determining this question the court must take into consideration the whole policy. By its title it is called "Peerless Bank Burglary Policy." Clause A deals with burglary from the safe, and in this clause

the insurance company assumes responsibility for the felonious abstraction of money from the safe by any person who shall have made entry into the safe by the use of tools or explosives directly thereupon. By another clause the insurance company assumes responsibility for all loss by robbery of money forcibly taken from that part of the bank partitioned off by guard rails for the use of its officers; and further it is provided that the insurance company is not to be liable where there is an inner steel burglar proof chest, unless the money is taken from the chest by an entry effected into it by the use of tools or explosives directly thereupon; nor for any loss by robbery commonly known as "hold-up," unless the regular working force is at work in the bank. It is true that the word "tool" has several meanings, and in one sense one person may be the tool of another. In this sense the cashier in opening the safe and in opening the inner chest was the tool of the robbers; but, when we read the whole policy, it is manifest that this is not the kind of tool that the policy contemplates. It is a burglary policy. The indemnity is for all loss by burglary of money, bullion, etc., by any person who shall have made entry into the safe by the use of tools or explosives directly thereon. Burglars' tools and explosives are evidently what the policy refers to. The insurance is in effect of the sufficiency of the safe against the tools and explosives of burglars. That it was not contemplated that the company should be liable where an officer of the bank was held up, as was done here, and no violence was done, is shown by the provision that the company is not to be liable for any robbery by hold-up unless the regular working force is at work in the bank. The insurance was not against all loss at the hands of burglars and robbers. The

money was required to be put in the inner safe or chest, and the insurance company was not to be responsible unless there was a forcible entry by tools or explosives, not only into the safe, but also into the inner chest. Fairly construed, this policy does not cover a loss by hold-up, where after the money is put in the safe, and the working force of the bank has left, an officer of the bank is held up and required to open the bank and the safe. We therefore conclude that the facts found by the court do not warrant a judgment for the plaintiff, and that on these facts a judgment should have been entered in favor of the defendant.

Judgment reversed, and cause remanded for furthere proceedings consistent herewith.

Nunn, J. not sitting.