A. H. BLANK, Appellant, v. NATIONAL SURETY COMPANY, Appellee.

**INSURANCE:** Burglary Insurance—"Entry by Use of Tools or
1   Explosives"—Construction.  A policy of insurance against loss by burglary, provided entrance into the safe is effected *"by means of the use of tools ·or explosives directly thereupon,"* does not cover a loss by burglary when entrance into the safe is effected "by successfully working the combination. or lock on the outer door and by then applying tools to break the inner money drawers."

**CONTRACTS:** Construction—Construction Against Party Using
2   Words.  The rule that construction of an ambiguous contract will be most strongly against the party using the words, is, by its very terms, not applicable to clear and definite terms. So held as to a policy of insurance against loss by burglary.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

SATURDAY, NOVEMBER 17, 1917.

ACTION on a policy for loss by burglary. The jury, by direction of the court, at the close of plaintiff's testimony

returned a verdict for defendant. Plaintiff appeals. The facts are stated in the opinion.—*Affirmed.*

*Miller & Wallingford* and *Oliver H. Miller,* for appellant.

*Dunshee, Haines & Brody,* for appellee.

STEVENS, J.—On or about March 4, 1914, the defendant issued and delivered to plaintiff a policy containing provisions indemnifying plaintiff against loss by burglary and robbery committed by means therein specified. It is claimed that, on the night of

1. INSURANCE: burglary insurance: "entry by use of tools or explosives:" construction.

October 6, 1914, burglars entered the room in which appellant kept a small Diebold safe with a combination lock on the outer door. On one side of the inner chamber of the safe were two small wooden boxes or drawers, which were locked with a key. The room in which the safe was located was entered by breaking the glass in a transom; the safe was entered by working the combination or lock on the outer door, thereby opening same without the use of tools or explosives. After entry into the safe was effected, the ends of each of the wooden boxes or drawers were broken off, and money and checks contained therein taken by the burglars. It is conceded by defendant that $462.84 in cash, the amount claimed, was thus taken, but it appears that payment of the checks, aggregating in amount $63, was stopped, so that no loss resulted on account of the taking thereof.

The petition of plaintiff alleges the burglarious entry of the room in which the safe was located, the entry into said safe, and the abstraction of the money and checks as above stated. The required proofs of loss were made by plaintiff to defendant. Defendant, in answer to plaintiff's petition, admits the execution of the policy, and pleads,

by way of special defense, that the same provides indemnity only against loss resulting from an entry into the safe effected by the use of tools or explosives directly thereupon, and that the entry into the safe in question was effected by working a combination or lock on the outer door, and without the use of tools, explosives, or violence of any kind. The provision of the policy which it is claimed directly covers the loss in question is as follows:

"For direct loss by burglary of any of the property described in paragraph 'A' from the safe or safes described in the schedule, located at the premises of the assured, by any person or persons who shall have made entry into such safe or safes by the use of tools or explosives directly thereupon."

The evidence satisfactorily shows that the outer door of the safe was locked, and that same was opened by working the combination or lock thereof. The theory upon which the trial court sustained defendant's motion to direct a verdict was that the policy provided indemnity only against loss resulting from an entry made into the safe by the use of tools or explosives directly thereupon, and that, where same was effected by working the combination or lock on the outer door, and only the wooden box or drawer on the inside was broken, no liability existed.

It is argued on behalf of appellant that the above provision of the policy is ambiguous, and that same must be construed most strongly against the insurer, and that, if properly interpreted and applied, it must be held to provide indemnity if the room or building in which the safe was located was burglariously entered, and access to the money box, or drawer, obtained without the use of tools or explosives, and the box or drawer containing the money was broken into by prying open or breaking the end thereof. The rule which requires doubtful or am-

2. CONTRACTS: construction: construction against party using words.

biguous language found in a policy of insurance to be, con-
strued most strongly against the insurer is so universally
known and recognized that reference to authorities to sus-
tain the same is unnecessary.

It is also the duty of the court, in construing a policy
of insurance, to seek to ascertain and determine the exact
obligation intended to be assumed by the insurer, and, in
doing so, language must be given its usual and ordinary
meaning, and a construction that is strained or forced
should be avoided. *Riley v. Interstate B. M. A. Assn.*, 177
Iowa 449. There is no apparent ambiguity in the language
of the policy. The language of the clause above quoted ex-
cludes the idea suggested by counsel. The indemnity pro-
vided is against loss resulting from an entry made into
the safe by the use of tools or explosives directly thereupon.
This necessarily means the door or outer part thereof. The
risk assumed by the insurer contemplates that the door of
the safe shall be securely locked, and that entrance therein
can be made only by the use of tools or explosives for that
purpose. This secures the insurer against loss resulting
from carelessness in leaving the safe door unlocked by per-
sons having access thereto. The policy is not a general
policy providing indemnity against all losses resulting
from burglary, but only such loss as results from means
employed according to the terms of the policy. The lan-
guage of the policy certainly does not contemplate indemni-
ty in a case where access is gained to the inner chamber of
the safe without the use of tools or explosives, nor against
loss resulting from breaking or destroying a wooden draw-.
er, which would offer but indifferent resistance to the sim-
plest tools after the outer door had been opened by working
the combination to the lock thereon. The policy does not
purport to cover all losses resulting from a burglarious
entry of the building in which the safe is kept, but only
losses resulting from an entry made into the safe by the

use of tools or explosives directly thereupon.  To give the policy the meaning contended for by counsel would deprive the language used of its usual and ordinary meaning, and distort the provision above quoted to mean something evidently not intended by the parties to the contract.

Appellant relies upon the holding of the Supreme Court of Indiana in *Fidelity & Cas. Co. v. Sanders*, (Ind.) 70 N. E. 167, in which a similar policy was construed by that court.  The conclusion announced in this case tends to support the theory of appellant, and holds that, where an entry into the safe was made by working the combination or lock on the outer door, and the money drawer on the inside of said safe was opened by breaking the lock and extracting the drawer from the safe and taking the money therefrom, the insurance company was liable.  So far as we have been able to find, the above is the only case so holding.

The language of the policy under consideration is identical with that in *Maryland Casualty Co. v. Ballard County Bank*, (Ky.) 120 S. W. 301.  In that case, robbers entered the bank and compelled the cashier to unlock the outer door to the safe, whereupon they took therefrom a sum of money.  The court held that the responsibility assumed by the insurer was the payment of money feloniously abstracted from the safe by persons gaining access thereto by the use of tools or explosives directly thereupon, and that the company was not liable under the above facts.

The language of the policy construed in *Brill v. Metropolitan Surety Co.*, 113 N. Y. Supp. 478, was, in effect, the same as the language in the policy in question.  Entry appears to have been made into the safe by unlocking the outer door without the use of tools or explosives, but the cash box was broken into and money stolen therefrom.  The court held that the defendant was not liable.

The Supreme Court of California, in *First National*

*Bank v. Maryland Cas. Co.*, 121 Pac. 321, had before it a policy containing the following provision:

" 'The company shall not be liable: (5) for the loss of money, bullion, bank notes * * * from a combination fire and burglar-proof safe or from a burglar-proof safe containing an inner steel burglar-proof chest, unless the same shall have been abstracted from the chest after entry also into the said chest effected by the use of tools or explosives directly thereupon.' "

It appears that the safe referred to in that case contained an inner burglar-proof chest; that the outer door and also the door to the inner chest were opened by working the combination or lock thereon. The court held that, as the entry to the contents of the safe was not effected by the use of tools or explosives, there was no liability. No similar provision in a policy of this character has been previously construed by this court, but, in our opinion, there is nothing uncertain or doubtful in its terms or meaning. It provides indemnity against loss occasioned by burglars in entering a safe by the use of tools or explosives upon the same. It is immaterial whether the room in which the safe is located is reached by breaking and entering or not. It seems to us that the holding in the Indiana case perverts the plain language of the policy and ignores its real purpose and meaning. The conclusion reached in the other cases cited appears to be supported by the better reasoning, and is in harmony with the clear and unambiguous meaning of the contract involved.

The trial court, in our opinion, rightly sustained defendant's motion to direct the jury to return a verdict in its favor. If the plain language of the policy is given its usual and ordinary meaning, no other conclusion is possible. The judgment of the lower court is—*Affirmed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.