SAMUEL KOMROFF (MERCHANTS NATIONAL BANK, EXECUTOR) *vs.* THE MARYLAND CASUALTY COMPANY.

Third Judicial District, Bridgeport, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES AND HINMAN, Js.

If the terms of an insurance policy are plain and unambiguous, there is no room for the application of the rule that, where more than one construction is open, that which is most favorable to the insured should be adopted.

A policy which indemnified the owner of two safes against the felonious abstraction of their contents "by any person or persons who shall have made forcible and violent entry into the said safes . . . by the use of tools, explosives, chemicals, electricity, oxy-acetylene gases or other similar gases, directly upon the exterior thereof, of which force and violence there shall be conclusive, visible marks," and which expressly excluded from its operation any loss "effected by the opening of the safes . . . through the use of any key or by the manipulation of any lock," could not be construed to cover a situation where a burglar entered the owner's store and, having bound and pointed a pistol

Komroff *v.* Maryland Casualty Co.

at the clerk and having secured from him by intimidation the combination of the locks, opened the safe by means of the combination and took therefrom a quantity of merchandise; nor did the fact that, before the burglar obtained the combination, he was heard by the clerk to use a hammer or other instrument on the safes, the marks of which, together with finger-prints, were revealed by a subsequent examination, bring the loss within the terms of the policy, which was obviously intended to include only an accomplished entry by force and violence and not a mere unsuccessful attempt.

Argued November 4th—decided December 16th, 1926.

ACTION to recover damages under a policy of burglary insurance, brought to the Superior Court in New Haven County and reserved by the court (*Ells, J.*), upon an agreed statement of facts, for the advice of this court.

*Benjamin Slade,* for the plaintiff.

*DeLancey S. Pelgrift,* with whom was *Philip Pond,* for the defendant.

HINMAN, J. The contract of insurance consisted of (1) a so-called "general policy" containing agreements and conditions appropriate and applicable to losses, whether by burglary, theft or larceny, and (2) a "rider" entitled "standard safe burglary rider" specifically describing the loss insured against and setting forth a further "special agreement" having reference and appropriate to insurance against safe burglaries. It was admitted in the argument that the general policy is used for all burglary risks but that there are several forms of rider specifying and limiting the losses covered and the manner of their incurrence, the premium rate charged being proportionate to the extent of the coverage provided for.

The indemnity specified by the contract in question was "for all direct loss by burglary of money, nego-

tiable securities and merchandise described in the schedule and herein stated to be insured hereunder, in consequence of the felonious abstraction of the same during the day or night from the safe, safes, or vault described in the schedule, . . . by any person or persons who shall have made forcible and violent entry into the said safe, safes or vault by the use of tools, explosives, chemicals, electricity, oxy-acetylene gases or other similar gases, directly upon the exterior thereof, of which force and violence there shall be conclusive, visible marks." The "special agreement" contained a provision (among many) that the insurer shall not be liable for any loss "effected by opening the safe, safes or vault through the use of any key or by the manipulation of any lock."

Such of the circumstances attending the loss by the plaintiff, set forth in the agreed statement of facts, as are material to the present inquiry may be briefly stated as follows: The plaintiff was engaged in the jewelry business and as a pawnbroker on State Street in New Haven. On February 4th, 1925, at about eight o'clock a. m., one Silver, employed by the plaintiff as a clerk, opened plaintiff's place of business and upon unlocking an iron door leading from the center of the store to the rear portion was confronted by a man (later identified as Michael Ricitelli), who pointed two pistols at Silver, hit him on the head with the butt of one of them, commanded silence, and bound and gagged him. Ricitelli took the keys from Silver's pocket and locked the front door; then, loosening somewhat the rope that bound Silver's hands and pointing a pistol at him, directed him, under threat of death, to open the safes.

Silver, upon these orders, started to turn the combination lock on one safe, but "took his time . . . hoping that someone would interfere." Ricitelli ob-

served that Silver's hands shook and said to him, "I see you are nervous and cannot open it. Give me the combination, but if you don't give me the right one, you will be a dead one in a minute." Silver thereupon gave the combination to the burglar, who opened the doors of both safes by the use of the combination. Ricitelli then tied Silver to a drain-pipe in the rear room, covered him with a fur coat, and going back to the safes took therefrom a large amount of jewelry and other merchandise and made his escape. The fair value of the goods so taken was $21,314.75; of these, articles of the value of $10,641 were later recovered by the police and returned to the plaintiff.

The burglar was heard by Silver to use a hammer or other instrument on the safes before he obtained the combination. Upon examination of the safes, marks were discovered around the locks; also finger marks, made by Ricitelli, were visible on the locks and doors of the safes.

The ultimate and decisive question presented by the reservation is whether or not the policy covers the loss sustained by the plaintiff under the circumstances above stated. The policy is, obviously, not intended to provide indemnity against any or all loss by theft or burglary from the safes, but only such loss as results from the employment of means specified therein. A more complete or general indemnity could have been obtained through a different rider carrying more comprehensive provisions as to the manner of loss, but involving payment of an increased premium commensurate with the greater risk.

In order to recover upon a policy of insurance it is essential that the insured bring himself within its express provisions. If there are provisions of doubtful meaning, that construction which is most favorable to the insured should be adopted. *Dresser* v. *Hartford*

Komroff *v.* Maryland Casualty Co.

*Life Ins. Co.*, 80 Conn. 681, 70 Atl. 39; *Moskovitz* v. *Travelers Indemnity Co.*, 144 Minn. 98, 174 N. W. 616. But if the terms are plain and unambiguous, they must be accorded their natural and ordinary meaning; the court cannot indulge in forced construction, nor so distort provisions as to give them a meaning evidently not intended by the parties to the contract and which would cast upon the insurer a liability which it has not assumed. *First National Bank* v. *Maryland Casualty Co.*, 162 Cal. 61, 121 Pac. 321; *Frankel* v. *Massachusetts Bonding & Ins. Co.* (Mo.) 177 S. W. 775; *Blank* v. *National Surety Co.*, 181 Iowa, 648, 165 N. W. 46; *Rosenthal* v. *American Bonding Co.*, 207 N. Y. 162, 168, 100 N. E. 716.

The language of the policy under consideration carefully limits the liability of the insurer to losses sustained through forcible or violent entry into the safes by the use of tools, explosives, chemicals, electricity, or certain gases, directly upon the exterior of the safe. It requires that the force and violence employed shall be such as to leave conclusive, visible marks thereof upon the safe. It impliedly, and in the clause of the special agreement which is quoted above, expressly, excludes burglary or theft by anyone who knew the combination and entered by the use of it alone, whether he be someone connected with the business of the insured and legitimately in possession of the knowledge, or a stranger who acquired it surreptitiously or otherwise. Comparison of the language of this provision with those which have been involved in earlier and somewhat similar cases suggests that it is the result of a gradual evolution calculated to eliminate claims of doubtful construction which have been made in the past, and with an intent to render it unambiguous. *Bruner Co.* v. *Fidelity & Casualty Co.*, 101 Neb. 825, 166 N. W. 242; *Moskovitz* v. *Travelers In-*

*demnity Co., supra; Columbia Casualty Co.* v. *Rogers Co.,* 29 Ga. App. 248, 114 S. E. 718. The result is that opportunity for reasonable doubt or claimed ambiguity appears to have been rather thoroughly eliminated.

The plaintiff claims, however, that the circumstances of this case constitute a forcible and violent entry into the safes "by the use of tools"; contending that Silver, though innocent and unwilling, and the pistol used to intimidate him, were "tools" in a sense admissible under the language of the policy. While it is true that in one sense a person may be the tool of another, it is clear enough that this is not the kind of a tool which the policy contemplates. The risk assumed was not against burglary or robbery in whatever manner accomplished; the tools referred to are those such as are employed by burglars to force an entrance into safes; the insurance is, in effect, of the sufficiency of the safes against such tools used by burglars. It does not extend, as do some more comprehensive policies considered in the cases, to loss by "hold up" of the insured or his employees, within which the present case might very likely fall. *Maryland Casualty Co.* v. *Ballard County Bank,* 134 Ky. 354, 120 S. W. 301; *First National Bank* v. *Maryland Casualty Co., supra; Brill* v. *Metropolitan Surety Co.,* 113 N. Y. Supp. 476.

The agreed facts that the burglar was heard to use some instrument on the safes before he extorted the combination from Silver and that marks were visible around the locks, are not sufficient to bring the entry within the terms of the policy. It is required that entry must be *accomplished* by force and violence upon the exterior of the safes "of which force and violence there shall be conclusive, visible marks." This latter requirement quite conclusively indicates that actual and substantial rather than technical force in breaking

into the safes is contemplated.    Even if the marks evince an attempt to obtain entry by the use of tools, manifestly such attempt was entirely unsuccessful, and the presence of the marks has no helpful significance, as might be the case were the actual means and manner of the entry open to question.   *Newark Dance Palace* v. *Maryland Casualty Co.*, 212 N. Y. Supp. 286; *First National Bank* v. *Maryland Casualty Co., Brill* v. *Metropolitan Surety Co.* and *Rosenthal* v. *American Bonding Co., supra.*

Answering, somewhat out of alphabetical order, the specific questions propounded, we advise that while (F) ambiguities in the policy, if any, should be construed against the defendant and in favor of the plaintiff, and (D) the abstraction of the property from the safes was felonious (C and E), the entry into the safes was not a forcible and violent entry by the use of tools within the meaning of the provisions of the policy, and (A and B) the defendant is not liable to the plaintiff for the loss sustained, either upon the agreed facts or upon the policy and certificate of renewal annexed.

No costs will be taxed in this court.

In this opinion the other judges concurred.