STURGIS NATIONAL BANK v. MARYLAND CASUALTY CO.

1. INSURANCE—CONSTRUCTION OF POLICY.
    Rule that policy will be construed most strongly in favor of insured does not apply where wording is not that of insurers, but is taken from statute or from some source for which insured is responsible.

2. SAME.
    Language of burglary insurance policy taken from copyrighted standard policy of bankers' association, of which insured was member, should not be extended in insured's favor beyond plain meaning of words.

3. SAME—INTENT.
    No forced or strained meaning will be given to words of burglary insurance policy that is contrary to obvious intent of parties.

4. CONTRACTS—CONSTRUCTION.
    Courts will not make new contract for parties under guise of construction of contract.

5. INSURANCE—BURGLARY INSURANCE—CONSTRUCTION OF POLICY.
    Word "tools," as used in burglary insurance policy covering forcible entry into bank safe or vault by use of tools, referred to mechanical tools used by burglars, and not to teller forced by gun to open vault, or gun with which force was accomplished.

---

Entry by use of tools, explosives, etc., upon safes, within meaning of burglary insurance policy, see annotation in 41 A. L. R. 855; 44 A. L. R. 473; 54 A. L. R. 470.

Error to St. Joseph; Hatch (Blaine W.), J., presiding.  Submitted October 17, 1930.  (Docket No. 108, Calendar No. 35,182.) Decided December 2, 1930.

Assumpsit by Sturgis National Bank, a national banking corporation, against Maryland Casualty Company, a Maryland corporation, on an insurance policy.  From judgment for defendant, plaintiff brings error.  Affirmed.

*Jacobs & Dresser,* for plaintiff.

*Stevens T. Mason* and *Mason, Alexander & McCaslin,* for defendant.

BUTZEL, J.  This case was presented to the lower court on an agreed statement of facts.  The main question is what does the word "tools" mean in a burglary insurance policy.

On December 17, 1928, at 12:45 p. m., four thugs entered the Sturgis National Bank, plaintiff.  All of the customers, together with the employees, with the exception of the teller, were forced at the point of guns to lie down on the floor of a back room.  The teller refused to open the combination of the vault.  After being struck on the head with a gun butt and then having the gun pointed at him, he yielded and unlocked the safe.  The bank was insured by Maryland Casualty Company, defendant, in the amount of $15,000, which is less than plaintiff's loss.  The insuring clause defining burglary and limiting the liability of the company is as follows:

"Maryland Casualty Company, Baltimore, does hereby agree with the assured * * * to pay the assured for loss sustained by the assured or by the owner (s), by burglary of money and securities feloniously abstracted during the day or night, from

within that part of any safe or vault to which the insurance under this paragraph 1 applies, *by any person or persons who shall have made forcible entry therein by the use of tools, explosives, electricity, gas or other chemicals, while such safe or vault is duly closed and locked.*"

In the stipulated facts of the case, it is stated that the form of policy was a standard one; that the insuring clause was copyrighted by the American Bankers Association, of which plaintiff is a member, and was adopted by defendant under a license granted by the association. The parties further stipulated:

"It is the claim of the plaintiff that the said vault and the said safe located therein were burglarized within the meaning of the said policy of insurance in that the circumstances of this case constitute a forcible entry into the safe by the use of tools contending that Walter Reick, though innocent and unwilling, and the gun used to intimidate him, were 'tools,' in a sense admissible under the language of the policy.

"It is the claim of the defendant that even though it may be true that in one sense a person may be figuratively the tool of another, it is clear from the language of the policy that this is not the kind of tools which the policy contemplates. The tools referred to in the policy are those such as are employed by burglars to force an entrance into safes or vaults.

"It is agreed that if the contention of the plaintiff is correct the plaintiff is entitled to a judgment against the defendant for $15,000 and interest from December 24, 1928, to date of trial at five per cent. per annum.

"It is agreed that if the contention of the defendant is correct the defendant is entitled to a verdict of no cause of action."

The lower court rendered a judgment in favor of defendant, and found that the policy did not cover a loss by robbery such as has been described. This is the sole question on appeal.

It is the claim of defendant that the wording of the policy insures against burglary but not against robbery, and that in any event forcible entry was not made by the use of tools, explosives, electricity, gas, or other chemicals as stated in the policy. Plaintiff claims, however, that the safe was burglarized within the meaning of the policy, because of the forcible entry of the safe by the use of tools in the sense that the cashier was an innocent and unwilling tool of the robbers, and also that a revolver is a burglar's tool.

There are exceptions to the rule that the wording of an insurance policy will be construed most strongly in favor of the insured. The rule does not apply when the wording is not that of the insurer but is taken from a statute or from some source that the assured is responsible for. In the present instance the wording was taken from an association to which the insured belonged. It was used under a license from such association by defendant. The policy was not one against banditry or robbery. It could not be extended under the circumstances beyond the plain meaning of its words. Another exception to the rule is that no forced or strained meaning will be given to words that is contrary to the obvious intent of the parties.

The court will not make a new contract for parties under the guise of a construction of the contract, when in so doing it will ignore the plain meaning of words. *Scripps* v. *Sweeney,* 160 Mich. 148, 163; *People* v. *Bowen,* 187 Mich. 257. According to Webster's New International Dictionary, a tool is first

defined as "an instrument of manual operation, as a hammer, saw, plane, file, or the like, used to facilitate mechanical operations, as distinguished from an appliance moved by and regulated by machinery." It is true that it also is given the remote meaning contended for by plaintiff, but this is figurative and metaphorical, and does not fit into the context of the present contract. When the word is used in conjunction with the words "explosives," "electricity," "gas," or other chemicals, it is evident that it refers to mechanical tools used by burglars. The policy plainly provided for burglary by the use of tools. Burglarious instruments are designated under section 15334, 3 Comp. Laws 1915, as any engine, machine, tool, or implement adapted and designed for cutting through, forcing or breaking open any building, room, vault, safe, or other depository. The court was correct in stating that no forced meaning or construction that could not have been within the minds of the parties should be given to the word "tools." The same reasoning applies to the claim that a revolver or gun is a tool. There is a difference between a tool and a weapon. The vault was not opened by the weapon. The very same question arose in two cases in which defendant's policy was involved. In the case of *Maryland Casualty Co.* v. *Ballard County Bank*, 134 Ky. 354 (120 S. W. 301), the court stated as follows:

"It is true that the word 'tool' has several meanings, and in one sense one person may be the tool of another. In this sense the cashier in opening the safe and in opening the inner chest was the tool of the robbers; but, when we read the whole policy, it is manifest that this is not the kind of tool that the policy contemplates. It is a burglary policy. The indemnity is for all loss by burglary of money,

bullion, etc., by any person who shall have made entry into the safe by the use of tools or explosives directly thereon. Burglars' tools and explosives are evidently what the policy refers to. The insurance is in effect of the sufficiency of the safe against the tools and explosives of burglars.''

In the case of *Komroff* v. *Maryland Casualty Co.*, 105 Conn. 402 (135 Atl. 388, 54 A. L. R. 463), the court stated as follows:

''The plaintiff claims, however, that the circumstances of this case constitute a forcible and violent entry into the safes 'by use of tools;' contending that Silver, though innocent and unwilling, and the pistol used to intimidate him, were 'tools' in a sense admissible under the language of the policy. While it is true that in one sense a person may be the tool of another, it is clear enough that this is not the kind of a tool which the policy contemplates. The risk assumed was not against burglary or robbery in whatever manner accomplished; the tools referred to are those such as are employed by burglars to force an entrance into safes; the insurance is, in effect, of the sufficiency of the safes against such tools used by burglars. It does not extend, as do some more comprehensive policies considered in the cases, to loss by 'hold up' of the insured or his employees, within which the present case might very likely fall.''

In holding that the plaintiff's loss did not come within the terms of the policy, the lower court was correct. The judgment is affirmed, with costs to defendant.

Wiest, C. J., and Clark, McDonald, Potter, Sharpe, North, and Fead, JJ., concurred.