**BAKER v. W. J. KENNEDY DAIRY CO.**

No. 6689.

Circuit Court of Appeals, Sixth Circuit.

May 14, 1935.

C. M. Youngjohn, of Detroit, Mich. (Butzel, Levin & Winston, of Detroit, Mich., on the brief), for appellant.

J. P. O'Hara, of Detroit, Mich. (Frank C. Cook, of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Action for damages for breach of contract. A set-off was claimed by appellee. At the conclusion of all the testimony the court directed a verdict for the appellee upon appellant's action, and a verdict against appellant on appellee's set-off.

The controversy arises over a contract for the sale of milk by the Van Camp Milk Company, hereafter called the company, to appellee.[1]

It was pleaded both in the declaration and in the reply that under this contract the parties, by the use of the expression "weighted price," understood and agreed that the price paid to the company for milk purchased by the appellee should be the "base milk price" in the Detroit milk area. Base milk price is calculated from fluid milk price, from surplus milk price, and from other factors. Fluid milk is milk which is consumed in the fresh, fluid state. Surplus milk is milk not so consumed, used in cheese, butter, etc., selling at surplus price, which is lower than the fluid milk price. Base milk in the Detroit area is estimated on the rating assigned to each producer, which is his average milk production, for the three months lowest in production. Base price, which is also an f. o. b. price, is calculated by a formula, which requires multiplication of the percentage of fluid milk in the base by the fluid milk price, multiplication of the percentage of surplus milk in the base by the surplus price with average freight rate added, and addition of the two products, thereby determining the base price per hundredweight for base milk.

Weighted price is weighted average price as determined from base price and surplus price, taking into consideration the varying quantities of milk sold. It is also the result of dividing the amount paid for all milk in the area by the total quantity of milk delivered for that price.

Appellant contends that the contract is ambiguous in price with the exception of that clause which relates to the price determined by the consensus of the Detroit Dairy Products Research Bureau and the Michigan Milk Producers Association. He claims that the only price so determined was the "base price," which is a definite, positive price, and that it, therefore, was the price agreed upon by the parties. This argument is inconsistent with his main point for it urges that the contract is not ambiguous, but that it fixes "base price" instead of "weighted price." It is also untenable. The contract itself, paragraph three of Article VI, refutes the contention. It defines weighted price in terms of base price and surplus price, and thus demonstrates that weighted price and base price are not synonymous. Former counsel for the company, who took a leading part in drafting the contract, testified in substance that under Article VI, weighted price could not mean base price, stating that a mistake had been made in drafting the contract.

---

[1] The material portion of the contract is as follows:

Art. VI. "The Buyer agrees to pay the Seller for all milk delivered to it pursuant to the terms of this agreement the weighted price per hundred pounds for Market Milk in the City of Detroit, Michigan, as determined by The Detroit Dairy Council. Such weighted price shall be subject to adjustment because of excess over, or deficiency under, a butter fat content of 3⁵⁄₁₀%, by application of the differential, at the time in force, as established by the Detroit Dairy Council.

"The words 'The Detroit Dairy Council' wherever used in this agreement are hereby defined to mean the consensus of the Detroit Dairy Products Research Bureau (acting on behalf of the distributors) and the Michigan Milk Producers Association (acting on behalf of the producers) effected by any arbitration between the two bodies and shall also be defined to include any successor or successors of such body or bodies which may hereafter fix or arbitrate the prevailing weighted price of milk in the City of Detroit, Michigan.

"The words 'weighted price' shall refer to that secondary determination of the price of milk which may be established by the Detroit Dairy Council by reference to the base price and the surplus of milk in the Detroit area from time to time (by way of illustration the base price in month of May, 1930, was $2.90 per hundred pounds of Market Milk having a butter fat content of 3⁵⁄₁₀% and the weighted price was $2.65)."

No witness stated that weighted price, as defined in this contract, means base price.

■ Appellant also contends that the price clause is ambiguous, and it should have been left to the jury to determine the reasonable price of the milk sold. This contention also is untenable. The circumstances which led up to the execution of the contract show not only that base price was deliberately excluded except as a factor in calculating weighted price, but also show that the contract is not ambiguous. It is proper to consider these circumstances when construing a contract. Merriam v. United States, 107 U. S. 437, 441, 2 S. Ct. 536, 27 L. Ed. 531; Hurin v. Electric Vacuum Cleaner Co., Inc., 298 F. 76 (C. C. A. 6); Drainage Dist. v. Rude, 21 F.(2d) 257 (C. C. A. 8).

In the preliminary negotiations which led up to the execution of the contract, the company proposed to sell milk at the base price, which is considerably higher than weighted price. The contract contemplated a ten-year period, and the price was the essence of the transaction. The company's proposal for sale at base price was rejected by the appellee, which refused to buy except upon the basis of weighted price. Hill, the company's representative, wrote on August 5, 1930: "In discussing the contract with them, I found that they had just one thought in mind and that the trade would go through in line with that thought or not at all. They insist that they must buy milk from us on the same set-up that we have been selling milk to you, namely the weighted price on market milk delivered at Detroit."

Two preliminary drafts of contracts exhibit the word "base" stricken out at every point where it was used, and the word "weighted" substituted. Also certified copies of resolutions of the Van Camp Packing Company and the Van Camp Milk Company, both members of the company group, authorized the execution of a contract with appellee for the sale and purchase of market milk "at the weighted price for market milk prevailing in the City of Detroit, Michigan."

The contract, therefore, unequivocally specified weighted price. The question next arises whether weighted price has a definite and positive meaning as defined in the contract.

Weighted price was shown to have a definite and positive meaning in the industry. A pamphlet of the United States Department of Agriculture showed weighted average milk prices in dollars per hundred pounds received by members of associations in widely separated centers throughout the country. Weighted price is the equivalent of average price. Six witnesses so testified. Anderson and Horner, two disinterested experts, said in substance that average and weighted mean the same thing. Beach, another expert, stated that weighted price is "theoretical," but said that in some markets average price is called weighted price. Horner, secretary of the dealers' association for this period, testified that they arrived at surplus price from the butter price records; that they figured out base price by using the sales price of fluid milk and the surplus price, and that they then determined an average price for all milk. He stated that the determination was made between himself as the secretary of the organization of milk dealers and Anderson, as the employee of the organization of milk producers. The weighted average prices so determined for the months in controversy were given by Horner. The average price "prevailed." That is to say, it was actually paid to producers in the Detroit area. Hence weighted price, as defined in the contract, was unambiguous.

■ The construction of the contract, since its terms were not ambiguous, was for the court. De Loriea v. Whitney, 63 F. 611, 618 (C. C. A. 1); Hurin v. Electric Vacuum Cleaner Co., Inc., supra.

■ Appellant's third contention is that the contract was given a practical construction by the parties as providing for base price. It is conceded that the appellee for seven months paid the company at the base price rate. Appellee claims that these payments were made without knowledge of the terms as to weighted price. Kennedy, who handled the payments, took no part in drafting the contract. Since the contract is unambiguous, however, the overpayments by the appellee could not and did not change its terms. Zilwaukee Township v. Saginaw-Bay City Ry. Co., 213 Mich. 61, 181 N. W. 37; Sturgis National Bank v. Maryland Casualty Co., 252 Mich. 426, 233 N. W. 367; Arkansas Amusement Corp. v. Kempner, 57 F.(2d) 466 (C. C. A. 8). The amounts were not controverted under the two theories of the price agreed upon, and hence it was not error to direct a verdict for appellee on appellant's action, and against appellant on appellee's set-off.

The judgment of the District Court is affirmed.