The **EMPLOYERS' LIABILITY ASSUR- ANCE CORP., LTD., Plaintiff,**

v.

The **TRAVELERS INSURANCE CO., H. Gordon, Incorporated, the Griffin Construction Company, Ralph Michaud and James E. Gill, Defendants.**

**Civ. A. No. 8476.**

United States District Court
D. Connecticut.
June 21, 1968.

John F. Scully, Cooney & Scully, Hartford, Conn., for plaintiff.

George Muir, Gordon, Muir & Fitzgerald, Hartford, Conn., for Travelers Ins. Co.

## MEMORANDUM OF DECISION

CLARIE, District Judge.

This action was brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. It requests the Court to make a judicial determination as to which of two insurance companies holds primary coverage, under the terms of liability policies issued by the plaintiff, Employers' Liability Assurance Corporation, Ltd., (Employers), a British corporation, and the defendant, The Travelers Insurance Company, (Travelers), a Connecticut corporation, respectively. The complexity of the legal issues is heightened by the "omnibus" and "loading and unloading" clauses in defendant Gill's policy whose employee, Michaud, was injured by the alleged negligent conduct of third parties. Plaintiff "Employers" had insured the third party tort feasor (Gordon) pursuant to the terms of a liability policy, which required that it defend employee Michaud's state court suit. As a consequence it contributed $20,000 as its share, to effect a compromise settlement of the case to release it from any further legal obligation to the injured party. This plaintiff now seeks reimbursement of this settlement, together with statutory interest and the legal expenses required in defending the suit. The Court finds that the employee exclusionary provisions in employer-Gill's liability policy bars reimbursement to the plaintiff under the extended coverage provisions of the defendant-Travelers' policy.

## FACTS

On November 4, 1967, the defendant, Griffin Construction Company, (Griffin) was engaged in building a church in Meriden, Connecticut. It hired Gill, who was in the trucking business, to provide a tractor-trailer and the services of a driver-helper (Michaud) to haul the huge wooden roof trusses from the railroad siding to the building site. Contractor Griffin also hired the defendant, H. Gordon, Incorporated (Gordon) to furnish a crane and the services of an operator (Maceotti) to assist in the loading and unloading. Each of these structural trusses was thirty (30) feet long and weighed about fifteen hundred (1500) pounds. They were of an open V-type shape, with the center point of the angle located at the vertex. The crane hook could not fit around the beam, so it was otherwise attached to one side of the vertex mid-balance point. This tended to cause the beam to slide to one side with the likelihood that it might hit against others still on the truck body and thereby cause surface marring. Contractor Griffin himself, with the assistance of a helper, took hold of the lines attached to the short end of one of the beams, in an attempt to prevent the long end from making contact, as the crane lifted it. Griffin instructed Michaud to get up on the truck and help guide the truss, as it was being removed. Upon a signal from Griffin, the crane raised it from the truck bed and the truss swung forward, so that as the

tension of the cable was relaxed, it struck Michaud's left foot, causing a severe tri-malleolar fracture of his ankle.

Michaud's employer, Gill, was insured with Travelers, under two policies; one an automobile policy which included liability coverage during the process of loading and unloading of the vehicle[1] and the other a workmen's compensation policy covering his employees, who might be injured in the course of their employment. After Gill had accompanied Michaud to the hospital, he promptly reported the accident to the office of the Travelers' agent from whom he had purchased the policies, Hemingway-Lewis Insurance and Realty Company. This agency had continuously written his automobile policies since the mid-1930's and had also issued compensation policies to him for two or three years prior to this accident. He reported the circumstances of the accident to an officer of the agency, as he had learned them from his employee (Michaud). He truthfully answered all the questions asked of him and cooperated with the agency in fully disclosing all the information requested. He actually relied upon the expertise of the agency to determine how the matter of notice to the insurance carrier should be handled. After having reviewed the information with Gill, Camp, an officer of said agency, selected the Travelers' standard report form entitled "Employer's First Report of Injury" on which to file written notice of the accident. This blank form was in fact designed by the insurer for the purpose of reporting workmen's compensation claims. It was one of several types of accident report blanks which Travelers had provided this agent for the filing of written notice to the company pursuant to the terms of the policy. The report was promptly received by the insurer, who proceeded to routinely process the claim as a workmen's compensation case. Travelers made no further investigation of the liability aspects of the case until Michaud commenced a suit in the state court returnable the first Tuesday of November, 1958, wherein he named the plaintiff's insured, H. Gordon, Incorporated, as a defendant together with the Griffin Construction Company. In both suits Michaud claimed damages for his injuries based upon the alleged negligence and carelessness of both of said defendants. The defendant, Travelers Insurance Company, intervened in the state court suit as a party plaintiff and demanded reimbursement for the moneys which it had paid to Michaud under its workmen's compensation policy.

## ISSUES

1. In a suit by an employee of the named insured against an additional insured under the omnibus clause, does the employee exclusion clause relieve the insurer of liability, notwithstanding the fact that the person injured was not an employee of the person claiming the benefits of the extended coverage.

2. Did the notice given by the insured to the agent of the insurer satisfy the requirements of notice prescribed in the liability policy contract, so as to afford coverage under the policy both to the named insured and the claimant of extended coverage.

## DISCUSSION OF ISSUES

There are at least two divergent interpretations of the liability policy exclusions which are applicable in cases such as this. Some jurisdictions hold that an employee of an insured other than the insured seeking protection is not within the language of the exclusion. Others hold that if the injured party is an employee of any person who is insured under the policy, the exclusion is applicable, although the insured-claimant may not have been an employee of the person committing the tort. See Annot., 50 A. L.R.2d, 78–107 (1956); 7 Am.Jur.2d Automobile Ins. § 133 (1963); Ins. Counsel J.Vol. 27–28 at 100 (1961).

The Travelers liability policy, whose terms require interpretation, was

[1]. Plaintiff's Exhibit #1.

sold and delivered to the insured, Gill, in the State of Connecticut and must be interpreted in accordance with the laws thereof. Commercial Contractors Corporation v. American Ins. Co., 152 Conn. 31, 202 A.2d 498 (1964). No Connecticut Supreme Court decision has specifically passed upon the insurance policy exclusion provisions placed in issue by these litigants. This Court must determine and apply the rule of law, which the Connecticut Supreme Court would use were the case to be decided by it. Concordia Ins. Co. of Milwaukee v. School District, 282 U.S. 545, 552, 51 S. Ct. 275, 75 L.Ed. 528 (1931); Merritt-Chapman & Scott Corp. v. Public Utility Dist. No. 2, 319 F.2d 94, 103 (2d Cir. 1963).

In the absence of a decision by the state court, this Court is bound by the decision of an intermediate state court, unless convinced that the state's highest court would decide differently. Six Companies of California v. Joint Highway District, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114 (1940); West v. American T. & T. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940).

The threshold questions to be resolved are, who is intended to be covered within the meaning of the term "insured"; and was the unloading activity which was being conducted at the time of the accident within the "purposes of use" provided for in the policy. Section III. of the Travelers' policy defines the term "insured" as follows:

"The unqualified word 'insured' includes the named insured and also includes, under divisions 1 and 2 of the Definition of Hazards, any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission * * *. The insurance with respect to any person or organization other than the named insured does not apply:

* * * * * *

"(b) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of an automobile in the business of such employer;

"(c) under division 2 of the Definition of Hazards, to the owner, or a lessee other than the named insured, of the automobile or to any agent or employee of such owner or lessee; * * *."

The conditions of the policy coverage, section six provide:

"* * * (b) The term 'commercial is defined as use principally in the business * * * of the named insured as stated in Item 1, * * * (c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

While the oral agreement for the use of the truck and driver was made with contractor-Griffin and the general operations were subject to the latter's orders and supervision, Gill, the truck owner, knew and fully understood the nature of the materials to be loaded and transported and the hazards of loading and unloading them. It was contemplated by the contracting parties, that the services of a crane and operator would be essential, to perform the proposed work assignment. The actual use of the vehicle was being carried on with the owner's permission, and Gordon's services and those of his agent-employee Maceotti, were implied in the overall contractual arrangements. Thus Gordon's crane operations were protected under the policy and within the extended coverage and loading and unloading provisions of owner-Gill's insurance.

The crucial issue raised by the pleadings is whether or not this extended insurance coverage to the unnamed insured, Gordon, was excluded under the terms of the policy, because the claimant in this instance was an employee of the

named insured truck owner. The latter's insurance carrier, Travelers, had already made substantial compensation payments to the injured-claimant Michaud, pursuant to the benefits prescribed under the state workmen's compensation law, prior to the commencement of this liability suit against the third party tort feasors.

A brief summary of policy exclusions will explain the latitude of the coverage. They read in part:

"THIS POLICY DOES NOT APPLY:

\*  \*  \*  \*  \*

(b) to liability assumed *by the insured* under any contract or agreement;

(c) to any automobile while used for the towing of any trailer owned or hired *by the insured* and not covered by like insurance in the company; or to any trailer while used with any automobile owned or hired *by the insured* and not covered by like insurance in the company;

(d) under Coverage A, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment *by the insured*, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment *by the insured*; \* \* \*." (emphasis added).

It is to be noted that all of these exclusions, including sub-paragraph (d) do not limit the identity of the insured, to the "named insured", but encompass the broad aspects of the unqualified word "insured." The term could thus apply to "the insured named in the policy", the person qualifying as "an additional insured" or "the insured calling for protection."

"It will be noticed that the language is 'the insured' and not 'the named insured', the latter being the language used in the policy where the intention is to designate only the person to whom the policy is issued; and the omnibus coverage clause, as above pointed out, defines the word 'insured' as used in the policy so as to include any person using the automobile with the permission of the named insured. The purpose of the exclusion clause is to limit coverage to liability for injury to members of the general public and to exclude liability to employees of the insured (citations omitted).

"There can be no question that the purpose was to apply the exclusion to employees of an additional insured as well as to those of the named assured, when consideration is given to the clause providing that the omnibus coverage clause shall not apply where the person injured is an employee of the same employer as an employee driving the car. \* \* \* (I)ts use in the policy shows clear intention that coverage shall extend only to liability to the public and that there shall be no coverage in the case of employees of an insured. Because the omnibus coverage clause makes an additional insured of an employee operating the car, it was necessary to insert the clause in question to prevent employees of the same employer being considered as to him members of the public." Lumber Mutual Casualty Ins. Co. of New York v. Stukes, 164 F.2d 571, 573–574 (4th Cir. 1947).

The issue here is not that of denying to the employee of an insured the right to sue a third party tort feasor, who is the proximate cause of his injury. The question is whether the tort feasor's insurance carrier shall be permitted to side-step its insurance contract and seek shelter behind the omnibus provisions in the liability policy of the claimant's employer.

The common sense principle to consider is that an employer purchases liability insurance to protect itself against claims of the general public, whereas workmen's compensation coverage is acquired to protect employees pursuant to the requirements of state law. See, Farmers Elevator Mutual Ins. Co. v. Carl J. Austed & Sons, Inc., 366 F.2d

555 (8th Cir. 1966); Lehman v. State Farm Mutual Automobile Ins. Co., 350 F.2d 568 (10th Cir. 1965); Miller and Bushong, Inc. v. Travelers Ins. Co., 231 F.Supp. 128 (M.D. Penn.1964).

"The clear and unambiguous terms of the policy leads us to hold that no employee of the named insured engaged in the named insured's business can recover on the named insured's policy against anyone included as an additional insured." Transport Ins. Co. v. Standard Oil Co., 1960, 161 Tex. 93, 337 S.W.2d 284; Hanover Ins. Co., Mass. Bond Dept. v. Travelers Indemn. Co., 318 F.2d 306, 309 (8th Cir. 1963).

"Certainly (the named insured), having paid for workmen's compensation insurance for the protection of its employees would not ordinarily take out liability insurance at its own expense to protect itself from any claim its employees might have against it or any third person. In other words, (it) was paying for the protection of its liability insurance against claims asserted by the public, and not by its own employees." Kelly v. State Automobile Insurance Assoc., 288 F.2d 734, 738 (6th Cir. 1961).

Connecticut law on this issue, has not been formalized by its highest court, but the reasoning expressed by O'Sullivan, J., (later Chief Justice) discloses its probable approach in the following dicta:

"An additional assured under a policy like that in question can never have greater protection than that afforded the named assured. Yet such would be the case if the plaintiff's position were sound. One would then be confronted with the anomalous situation furnished by the fact that certain protection to an additional assured is denied to the one whose money paid for the policy and whose motive must have been to seek all the protection it could get rather than to lavish it upon some unnamed and as yet unknown person who fortuitously might later

obtain permission to operate the automobile covered by the policy. Exclusion 5 would then become meaningless for all practical purposes." Bronkie, Admx. v. Lumbermen's Mutual Casualty Co., 3 Conn.Supp. 364, 369 (Sup.Ct.1936).

This position is further strengthened and confirmed in an unpublished Connecticut Superior Court decision by MacDonald, J., who while deciding the case under Pennsylvania law, expressed the opinion that it was not inconsistent with the *Bronkie* case, cited supra. He stated:

"To hold * * * that this exclusion applies only where the injured party is the employee of the specific assured against whom the personal injury claim is being made * * * is to change the meaning of the policy and give a broader coverage than ever intended by the parties to the contract. Such a construction would be forced and artificial and should not be given. Komroff v. Maryland Casualty Co., 105 Conn. 402, 406, 135 A. 388, 54 A. L.R. 463. This court is in accord with the authorities which hold that the employee exclusion does apply in a situation such as that presented here. See Travelers Ins. Co. v. Ohio Farmers Indemnity Co., 157 F.Supp. 54 (W.D.Ky.1957), affirmed 262 F.2d 132, 133 (C.C.A. 3, 1958); Lumber Mutual Casualty Ins. Co. of N. Y. v. Stukes, 164 F.2d 571 (C.C.A. 4, 1947); American Fidelity & Casualty Co. v. Indemnity Ins. Co. of North America, 308 F.2d 697 (C.C.A. 6, 1962). This view also does not appear to be inconsistent with the opinion of this Court. Bronkie v. Lumberman's Mutual Casualty Co., 3 Conn.Supp. 364." Travelers Ins. Co. v. Virginia Surety Company, et als., No. 1359, Superior Court, Fairfield County, October 31, 1961.

■ The employee exclusion clause in the Travelers' liability policy applies to the situation presented here, where an employee of the insured, at least an employee of the named insured, is suing

another insured under said policy. The defendant-insurer under the omnibus clause is therefore relieved of liability, notwithstanding the fact that the person injured was not the employee of the person claiming the extended coverage. Since coverage is denied for the foregoing reasons, the remaining issue of notice thus becomes moot and the Court will not discuss its merits. Judgment shall be entered for the defendants on the complaint. · SO ORDERED.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court pursuant to Rule 52(a), Fed.R.Civ.P.

### RULING ON PLAINTIFF'S MOTION FOR A NEW TRIAL OR TO ALTER OR AMEND JUDGMENT

The plaintiff's motion requests a new trial or in the alternative an order altering or amending the judgment entered, pursuant to Rule 59, Fed.R.Civ.P. It cites among other reasons, two recent Connecticut Supreme Court cases, as supporting its claim that defendant Travelers' alleged breach of duty to defend the state court suit against plaintiff's insured prohibits its reliance upon an exclusion clause contained in the policy. Schurgast v. Schumann et al, 156 Conn. 471, 242 A.2d 695; Missionaries of Co. of Mary, Inc. v. Aetna Casualty & Surety Co., 155 Conn. 104, 230 A.2d 21 (1967).

The Court has considered the plaintiff's claims and is of the opinion that the principle of law on which those cases were decided is not applicable to the facts here. This action against the plaintiff's insured, Plaintiff's Exhibit #9, was returnable to court on the first Tuesday of November, 1958. Thereafter, on November 28, 1958, Travelers intervened as a party-plaintiff in said action against the plaintiff's assured, H. Gordon, Incorporated.

■ The first formal request to Travelers to defend it occurred on August 10, 1959 (Plaintiff's Exhibit #18). Knowledge of the litigation might conceivably be construed to be on February 3, 1959, when the other defendant, Griffin Construction Company, notified Travelers' insured (Plaintiff's Exhibit #10); or when Travelers intervened in the state court suit to recover the Workmen's Compensation already paid to the injured employee (Plaintiff's Exhibit #18); or when Gill originally notified Travelers' Agent on the day of the accident of what had occurred (Plaintiff's Exhibit #2). Regardless of the date selected, Michaud's suit on its face does not create a legal obligation for Travelers to defend. The facts which establish the relationship and legal status of the parties are clear and unequivocal. On the basis of these facts, the exclusion on the face of the policy frees Travelers from any obligation to appear and defend as a matter of law. Absent any breach of contract by an unlawful refusal to defend, the terms of the policy exclude Travelers from liability, for reasons more specifically stated in the Memorandum of Decision filed June 23, 1968. Plaintiff's motion is denied.