William A. Brown et al., Respondents, *v.* The St. Nicholas Insurance Company, Appellant.

A policy of marine insurance upon the cargo of a canal boat contained a clause that if the boat was "prevented or detained by ice, or the closing of navigation, from terminating the trip," the policy should cease. The boat, with others in a tow, was proceeding down the D. river, when, in consequence of a gale, the towing tugs were separated from the boats, which were driven ashore and stranded, ice formed around them during the night, so that the tugs could not reach them, although the channel of the river remained open. The boat remained frozen in until a thaw, when the wind and ice forced her upon another, she broke in two, sank, and the cargo was injured. In an action upon the policy, *held*, that the words "prevented or detained by ice" meant detention in the ordinary course of navigation; that the predominating efficient cause

of the loss was the storm, not the ice; and that the clause did not apply, and defendant was liable.

*Hadkinson* v. *Robinson* (3 B. & P., 383); *Foster* v. *Christie* (11 East, 205); *Livie* v. *Janson* (12 East, 647), and *Patrick* v. *Com. Ins. Co.* (11 J. R., 14) questioned and distinguished.

(Submitted May 28, 1874; decided September term, 1874.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiffs, entered upon a verdict. (Reported below, 2 J. & S., 237.)

This action was brought to recover the amount of a policy of marine insurance issued in December, 1863, by the defendant upon a cargo of hay laden on the canal boat George R. Hale, on a voyage from New York to the city of Washington.

The policy contained a clause known as an "ice clause," in the following terms: "It is understood and agreed that if any boats the cargo of which are covered by this policy are prevented or detained by ice, or the closing of navigation, from terminating the trip, then in such case the policy shall cease to attach upon said cargo, and this company shall return the premium for the unexpired portion of said trip." There was also a clause that the insured vessel "could touch and stay at any ports or places if thereunto obliged by stress of weather, or other unavoidable accident without prejudice to this insurance." The canal boat with her cargo left New York in December, 1863, and proceeded by way of the canals with a tow of other boats to Philadelphia. She left Philadelphia January 1, 1864, in a tow of about twenty-five boats, towed by four or five steam tugs. They proceeded down the Delaware river, on their way to the Chesapeake and Delaware canals. In the afternoon the wind began to blow, increasing to a heavy gale; during the gale, the tugs were separated from the canal boats, and the latter were drifted ashore on the same night, at a place called "Church's landing." This was on the New Jersey side of the river, about fifteen miles from Philadelphia. The Hale lost from her deck twenty or more bales of hay at this time, but sustained no other

injury.  When she went ashore  there was some ice in the river, but not enough to interfere with navigation.  During the night, it formed around the boats to  such  an extent that the tugs could not reach them the next  morning,  though an effort to do so was made.  The boat Hale continued frozen in until a  thaw occurred January eighteenth or nineteenth. After the thaw, on the morning  of  the  twentieth, the wind and ice forced the boat upon another canal boat in such a way that when the tide went  down  she  broke in  two and sank. Four or five days  afterwards the remaining  canal  boats proceeded under tow by way of the canals to  Washington, where they arrived safely with their  cargoes.  The channel of the river was open during the time that  the  boats lay ashore, though incumbered by floating ice.  There  was  nothing but the action of the gale to prevent the  boats from reaching the canal at Delaware city, on  the  morning  of  January second. After the wreck, the  plaintiffs abandoned the cargo to the insurers (defendants), and  claimed  a  total  loss.  The cargo was injured by contact with the  water to more than  one-half its value.

On the trial, the judge charged the jury that the stress of weather, by driving the vessel ashore, must be regarded as the primary cause of the loss of the cargo.  To this proposition exception was taken by the defendants.

The defendants requested the judge to charge the jury that the plaintiffs were entitled to  recover no more damages than sufficient to compensate for the injury to the cargo at the time the vessel was frozen in.  The judge refused so to charge, and the defendants excepted.

The court thereupon charged the jury that the plaintiffs were entitled to recover the full  value of  all the hay on board the boat George  R.  Hale, insured  by the policy in question.  To this direction due exception was taken.

The jury rendered a verdict accordingly.

*John C. Perry* for the appellant.  The word " detained," as used in the policy, does not refer to a state of things which

would absolutely prevent the terminating of the trip. It refers to a detention that would prevent the boat proceeding immediately on its trip. (*Palmer* v. *Warren Ins. Co.*, 1 Story, 360; *Black* v. *Marine Ins. Co.*, 11 J. R., 287, 292.) It is clear that the detention contemplated by the contract happened before the destruction of the boat. (*Foster* v. *Christie*, 11 East, 205; *Hadkinson* v. *Robinson*, 3 B. & P., 388; *Speyer* v. *N. Y. Ins. Co.*, 3 J. R., 88, 94.) The maxim *causa proxima non remota spectatur* has no application to this case. (*Swan* v. *U. Ins. Co.*, 3 Wheat., 168; *Patrick* v. *Com. Ins. Co.*, 11 J. R., 9, 14; *Livie* v. *Janson*, 12 East, 648; *Hahn* v. *Corbett*, 2 Bing., 210, 212; 3 Kent Com. [12th ed.], 302, *note d; Foster* v. *Christie*, 11 East, 205.) The court erred in charging the jury that the stress of weather must be regarded as the primary cause of the whole damage. (*Swan* v. *U. Ins. Co.*, 3 Wheat., 168; *Patrick* v. *Com. Ins. Co.*, 11 J. R., 13; *Bradley* v. *Mut. B. L. Ins. Co.*, 45 N. Y., 422; *Brown* v. *Neilson*, 1 Cai., 525.)

*R. H. Underhill* for the respondents. It was proper to instruct the jury to find a verdict for the full value of the cargo insured. (*L'Abinger* v. *Salvador*, 3 Bing. N. C., 286; 2 Arn. on Ins., 801, 1000, 1004; *Melish* v. *Andrews*, 15 East, 15; *Hahn* v. *Corbett*, 2 Bing., 205; *Magoun* v. *N. E. Ins. Co.*, 1 Story, 157; *Nesbit* v. *Lushington*, 4 T. R., 787; *Dole* v. *N. E. Mut. Ins. Co.*, 2 Cliff., 394–432; *Vos* v. *U. S. Ins. Co.*, 2 J. Cas., 180; *Grim* v. *Phœnix Ins. Co.*, 13 J. R., 451; *Coolidge* v. *N. Y. Ins. Co.*, 14 id., 316; *Am. Ins. Co.* v. *Dunham*, 12 Wend., 463; *Allen* v. *Mer. Ins. Co.*, 46 Barb., 642; *Phœnix Ins. Co.* v. *Cochran*, 51 Penn. St., 143; 1 Pars. on Ins., 556, 623; *Coil* v. *Smith*, 3 J. Cas., 16; *Stagg* v. *U. S. Ins. Co.*, id., 34; *Duncan* v. *G. W. Ins. Co.*, 3 Keyes, 394.)

DWIGHT, C. The sole question in this case concerns the proper construction of a clause in a marine insurance policy, commonly termed an "ice clause." The policy attached to

a cargo of hay passing from New York to Washington in a canal boat under tow through the Delaware river. The voyage commenced in the winter, and the insurers, while undertaking the ordinary sea perils, provided that if the boat on which the hay was laden was " prevented or detained by ice or the closing of navigation from terminating the trip, then in such case the policy shall cease to attach upon the cargo, and the company shall return the premium for the unexpired portion of the trip."

It will be observed that this is not the ordinary case of a warranty operating as a condition precedent to the attaching of the policy. It rather assumes that the policy has attached and provides for its cessation. It is rather in the nature of a condition subsequent. It recognizes the validity of the policy, and the liability of the insurers up to the time when their responsibility terminates, on the happening of the prescribed events — prevention or detention by ice, or the closing of navigation, from terminating the voyage. Until these events happen, the insurers are clearly liable for all losses occurring from the ordinary perils of the sea. When they transpire, the policy ceases to have binding effect.

The only point to be considered is, whether the boat, in the present case was prevented or detained by ice from terminating the voyage. Was the true cause of detention, etc., the ice, or the stress of weather? If the latter, the insurers are still liable, as the main clauses of the policy are applicable; if the former, the insurers are discharged.

The true construction of these words is to be sought in the ordinary rules which control the interpretation of written instruments. They are not ambiguous, and need no aid from the testimony of experts. Their signification is purely a question of law. (*St. Luke's Home* v. *Ass'n for Ind. Females*, 52 N. Y., 191.)

It will be observed that there are two general modes in which it is anticipated the boat may be precluded from accomplishing its voyage — ice, or the closing of navigation. These causes may operate either temporarily or permanently.

Whether there was a delay by the presence of ice, or a termination of the voyage by the closing of navigation, the insurers were, in either case, to be discharged. It is plain that either of these causes must operate in the same general manner; that is, as the efficient cause of detention, or breaking up of the voyage.

The facts of the present case showed that there was no closing of navigation, and no detention of boats by ice along the usual channels of navigation. A heavy gale drove the boat, on which the cargo in question was carried, on to the shore, so that she was stranded. The detention caused by her being driven out of her course was due, beyond all question, to the gale. Her detention on the shore until the ice formed around her was due to a consequence of the gale, stranding. Did that cause cease to operate because ice formed in front of the boat and between her and the channel? Is it not, rather, the true view, that the presence of the ice *prevented the removal of the cause* which created detention, and was slowly working the destruction of the cargo?

What is the proximate cause of the loss? This is always a difficult question to determine in the case of a conjunction of causes. The policy must have, in settling this question, a reasonable interpretation, with a view to effectuate the intention of the parties. The words "detained, or prevented by ice," must mean detention in the ordinary course of navigation. The contract contemplated that the canal boat should be moved by a tug. This motive-power was carried away by a storm, and ice subsequently formed so as to prevent it from returning. The efficient cause of the detention was the loss of the motive-power through the stress of the storm, and the ice acted only as an obstacle to its restoration. Suppose that the tug, after separation, had been captured by an enemy? Would the loss of the canal boat have been due to the capture of the tug? Would not the true cause of its loss have been the storm which drove the two vessels asunder, and left the canal boat at the mercy of the elements?

A well known writer on the law of marine insurance

has laid down two rules applicable to this subject, which appear to be sound, and which were approved by the Supreme Court of the United States in *Insurance Co.* v. *Transportation Co.* (12 Wallace [U. S.], 196). These rules are as follows: "1. In case of the concurrence of two causes of loss, one at the risk of the insured, and the other insured against, or one insured against by A. and the other by B., if the damage by the perils, respectively, can be discriminated, each party must bear his proportion. 2. Where different parties, whether the insured and the underwriters, or different underwriters, are responsible for different causes of loss, and the damage by each cannot be distinguished, the party responsible for the predominating efficient cause, or that by which the operation of the other is directly occasioned, as being merely incidental to it, is liable to bear the loss." (1 Phil. on Ins., §§ 1136, 1137.) The present case falls under the second of these rules. The predominating efficient cause is the storm. It is well settled that an insurer is liable for all the consequences directly resulting from a peril insured against, as where a boat is lost after a storm has ceased, in consequence of damage done during a storm. (2 Pars. on Mar. Law, 261.)

Suppose that in the present case a general of an army had laid down a bridge between the canal boat, as she lay on shore, and the tug in the channel, would the detention have been due to the bridge or the stranding? If a man's house were besieged by burglars, and his friends were prevented from relieving him by the sudden closing of a gate, by some distinct act of persons unconnected with the burglary, would his detention in his house be due to the closing of the gate, or rather to the act of the burglars, as "the predominating efficient cause?" Such an inquiry was, to some extent, involved in *Ionides* v. *Universal Marine Ins. Co.* (14 C. B. [N. S.], 259). The ship insured against the perils of the sea went ashore. The light at Cape Hatteras, North Carolina, existing there for many years, and visible for twenty-five miles at sea, had been extinguished by the Confederate authorities to harass

the United States shipping. The question was whether the cause of the loss was the peril of the sea, or the absence of the light. BYLES, J., in giving his opinion, said : " The original meritorious cause, and in popular language the cause of the loss, was the captain's being out of his reckoning. He was some fifty miles to the westward of his course, without knowing it. The absence of the light was merely the absence of an extrinsic saving power. Could that be said to be the cause of the ship's destruction ? Suppose a man throws himself into the Serpentine, and the means of rescuing him are not at hand, and he is drowned, could it be said that the man is drowned because of the absence of the saving power ? " (P. 296.) In the case at bar, the detention commenced with the stranding. That detention and its concomitants never ceased until the boat was destroyed. That was the only detention existing ; and the failure of the tugs to reach the boat was, in the words of BYLES, J., the " absence of an extrinsic saving power." Any other view would lead to mere speculative considerations. Suppose that the intervening ice had not formed, what certainty is there that the canal boat could have been got off from the shore so as to have pursued her voyage ? The detention occasioned by the stranding never ceased until the dangers of the thaw came on, which, in combination with the existing causes growing out of the stranding led to her destruction. This test has been suggested in one of the cases : Suppose that an insurance had been made in another company against the very cause of loss excluded in this. For example : The boat is insured " against detention by ice," could there have been a recovery on the facts proved at the trial ? Would it not have been successfully objected that the loss was occasioned by the stranding, and that the detention by the ice was merely incidental to that ?

Another view of the case may be suggested. The voyage terminated with the stranding. There was never a moment after that occurence, in which it was resumed. Accordingly the formation of the ice could not properly be said to detain

a boat whose voyage before that formation had already come to an end.. In *Bondrett* v. *Hentigg* (Holt N. P. C., 149), the facts were that of the goods insured against a peril of the sea, a part were lost and a part got on shore. This last portion was plundered and destroyed by the inhabitants of the coast, so that no part of it ever got to the possession of the insured. GIBBS, C. J., held this to be a case of total loss. The reason given is, that the portion of the goods saved from the wreck, though got on shore never came again into the hands of the owners. The total loss was the proximate result of the wreck. This case was approved in *Ionides* v. *Univ. Mar. Ins. Co.* (*supra*). In *Hahn* v. *Corbett* (2 Bing., 205), goods were insured "free from capture and seizure." The vessel was stranded off Maracaibo and part of the cargo damaged and both vessel and cargo seized by royalists, then in possession of the coast, as prize. There was held to be a total loss, both of the damaged and undamaged goods, by a peril of the sea. The loss was deemed to take place at the time of the stranding as to all the goods. BEST, C. J., in delivering his opinion said, it is clear that the goods would never have moved, as the ship never moved. It was as if they had been cast on a rock and were completely out of reach. (P. 210.) To the same effect is the language of the court in *Magoun* v. *N. E. Mar. Ins. Co* (1 Story, 164, 165), where it is laid down, that if there be a capture and before the vessel is delivered from that peril, she is afterward lost by fire or accident, the whole loss is attributable to the capture. The vessel was never delivered from that peril, until she was virtually destroyed and unable to perform the voyage. In such a case the insurers are liable, though the loss is followed by the operation of a peril excepted from the policy. (Phil. on Ins., § 1161.)

It is not claimed that *stranding* is *ipso facto* a total loss. It may and often does prove the destruction of the voyage, by the ship afterward becoming a wreck before she shall be put afloat. ( *Wood* v. *Lin. and Ken. Ins Co.*, 6 Mass., 479 ; *Manning* v. *Newnham*, 3 Douglas, 130 ; 2

Phill. on Ins., § 1526.) Whether it is to be regarded as a total loss or not, depends on all the circumstances of the case, as they ultimately turn out, which may relate back to the time of stranding and characterize it. It is closely analogous to submersion and is *prima facie* evidence of total loss. (*Sewall* v. *U. S. Ins. Co.*, 11 Pick., 90, 94.) If the ship remains stranded and is subsequently lost, and it is claimed by the insurers that such loss is occasioned by a peril excepted from the policy, it must appear that it is owing to the direct effect of the excepted peril. (1 Phill. on Ins., §§ 1129, 1131.) The burden of proof is thus cast on the defendant. (Per BAYLEY, J., in *Levi* v. *Allnutt*, 15 East, 269.)

It is now proper to consider the authorities cited on behalf of the defendant.

The case of *Hadkinson* v. *Robinson* (3 B. & P., 388 [A. D. 1803]), was an insurance against capture on a cargo from an English port to Naples, with leave to join a convoy. In the course of the voyage, information was received by the master that the port of Naples was closed against English ships. The ship accordingly proceeded to another port where the cargo was sold for a small sum, whereupon the assured abandoned as for a total loss. The court held that the fear or prospect of capture in a hostile port was not equivalent to capture itself, or in its own language, that the peril must act directly and not collaterally upon the thing insured. If the principle of this case be sound, of which there is great doubt (3 Kent's Com., 293, 294), it has no application to the case at bar, where a sea peril did act directly upon the boat, and occasioned its stranding. *Forster* v. *Christie* (11 East, 205), is to the same general effect, Lord ELLENBOROUGH remarking, that the risks insured against must be the effective cause of the loss. *Speyer* v. *New York Insurance Company* (3 J. R., 88), simply holds, that if the event happens on which the insurers are warranted free from liability, it is equivalent to an actual termination of the risk by the landing of the goods. This, of course, is not disputed.

*Livie* v. *Janson* (12 East, 647) is much relied on by the

defendants. In that case, an English ship endeavored to elude, by night, an embargo, in passing out of the port of New York; a body of ice, propelled by the tide and wind, drove her upon Governor's island, where she was stranded. In the morning she was taken possession of by the custom-house officers, and, finally, condemned for a breach of the embargo. In an action on a policy of insurance, the court held that the loss was not occasioned by the stranding but by the seizure, which was deemed to be the proximate cause of the loss. Two observations are to be made upon this case: One is, that the ship was engaged in the violation of law, and on account of that the seizure was made. The loss was, virtually, occasioned by the act of breaking the embargo. (Per Burroughs, J., in commenting on *Livie* v. *Janson*, in *Hahn* v. *Corbett, supra*, p. 212.) The other observation is, that the peril which was held to occasion the loss acted directly upon the property insured. In that aspect of the case it falls within the rule laid down by Lord Alvanley, in the case of *Hadkinson* v. *Robinson*, already referred to, that the peril must act *directly* and not collaterally upon the thing insured. This was not the case in the facts now under discussion, as to the action of the ice. It acted only *indirectly* in preventing the tugs from going to the rescue of the boat. If it had reached the canal, and the storm had caused its banks to burst, and the boat had been swept out into the open fields, and ice had been formed between it and the canal, thus preventing the use of appliances for returning it to the canal, would the ice have acted directly in causing the detention? If so, and there had been no ice, would the earth that was washed out of the canal bank, and whose absence prevented the filling of the level, be a cause of detention? Or if laborers could not be got to shovel the earth back, would the absence of them be such a cause? All these are obstacles or hindrances to the prosecution of the voyage, but none of them act directly, as causes, within the rule, either in *Hadkinson* v. *Robinson* or *Livie* v. *Janson*.

It should be added, that there is great reason to doubt the

soundness of each of these cases. The former of them has already been remarked upon. *Livie* v. *Janson* has been severely criticized by text writers, and doubted in decisions. Mr. Phillips says it is surely wrong, as well as the *nisi prius* case of *Green* v. *Elmslie* (1 Peake's N. P. Cases, p. 212). He adds, that these decisions need support themselves rather than suffice for the support of others. The case of *Livie* v. *Janson* is treated unfavorably in *Hahn* v. *Corbett* (*supra*, 295). In the recent case of *Ionides* v. *Univ. Mar. Ins. Co.* (14 C. B. [N. S.], 283), it is said by Willes, J., to be open to observation. (See, also, *Dole* v. *New England Ins. Co.*, 2 Cliff., 394, 433 ; 1 Phill. on Ins., § 1136.) The principle of the case seems to be opposed to a decision in the same court (*Levi* v. *Allnutt*, 15 East, 267), as well as to other cases already cited in this opinion.

The only other case necessary to be noticed is *Patrick* v. *Com. Ins. Co.* (11 J. R., 14). In this case a cargo was insured from New York to Cadiz ; and there was a clause in the policy that the insurers took no risks in port but sea risk. The ship was forced from her moorings in a violent gale and driven on shore, where she lay above high-water mark. After the gale abated, she was forcibly taken possession of by French troops, then holding the port, and burnt with the cargo. The cargo was not injured by the stranding. The court held that the cargo was not lost through the stranding but through the forcible act of the French.

The decision is rested solely on these doubtful cases of *Livie* v. *Janson* and *Green* v. *Elmslie*, already considered, and can of course be of no higher authority. It is also quite difficult to reconcile with the decision immediately preceding it in the same volume ; where the court held that on the same state of facts the ship was lost by means of the stranding. It seems impossible to deny that the cargo, under the circumstances, was identified with the ship, and, that within the principle in *Hahn* v. *Corbett* (*supra*), the goods were as completely lost at the moment of stranding as if they had been cast on an inaccessible rock.

It is not necessary to consider in detail the exceptions to the charge, as the views already given dispose of them.

The judgment of the court below must be affirmed.

All concur.

Judgment affirmed.