JOSEPH PORTO *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

MALTBIE, C. J., HAINES, HINMAN, AVERY and FOSTER, Js.

Argued May 10th—decided June 27th, 1935.

*Thomas R. Fitzsimmons,* for the appellant (plaintiff).

*Stanley Daggett,* with whom, on the brief, was *David L. Daggett,* for the appellee (defendant).

HINMAN, J. The complaint alleged that on November 1st, 1928, the defendant entered into a contract of life insurance in the amount of $1000 with Marion Porto, in which the plaintiff is named as beneficiary. The premiums were paid up to and including August, 1932. About August 1st, 1932, the insured became ill and wholly incapacitated, subsequently became mentally incompetent, and died February 5th, 1933, without having regained her health or sanity. The policy provided that after premiums had been paid for two years, the owner or assignee, upon written request filed with the company and surrender of the policy within three months after the due date of any premium in default, should be entitled to one of three options:

(a) cash surrender value; (b) paid-up whole life insurance (a continuance of the policy in force for such reduced amount of insurance as the cash surrender value will purchase); (c) paid-up term insurance (a continuance of the policy in force for such term as the cash surrender value will purchase). It further provided that if one of these options was not so availed of within the three months the policy would be continued as paid-up whole life insurance as per option (b). By reason of her insanity the insured was unable to exercise the options and the plaintiff did not know of the existence of the policy until after her death. Within three months after her death the plaintiff tendered the policy and demanded $1000 as paid-up term insurance [option (c)], which amount the defendant refused to pay.

The defendant demurred to the complaint on the ground that it does not appear therefrom that written request for paid-up term insurance was filed within three months after the due date of the premium in default—September 1st, 1932, as required by the policy.

The policy here involved plainly provides that in order to entitle the insured to exercise his choice of one of the three options specified, he or his assignee must make written request therefor and present the policy for surrender or indorsement within three months after the due date of the premium in default. Confessedly this was not done. The premium remained in default for more than five months before the death of the insured and the allegation upon which the plaintiff beneficiary depends in respect to compliance with this requirement is that he attempted to exercise the option, by request and tender of the policy, within three months of the date of insured's death. It is conceded that if recovery may be had under such circumstances it must be because of the disability

caused by the insanity of the insured during the period of default preceding her decease, and the issue determinative of the demurrer is whether that disability so suspended or otherwise affected the time limitation as to permit an exercise of the options as and at the time alleged.

If the terms of an insurance policy are of doubtful meaning, that permissible construction which is most favorable to the insured is to be adopted; but if they are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties. *Komroff* v. *Maryland Casualty Co.*, 105 Conn. 402, 405, 135 Atl. 388; 14 R. C. L. p. 925. The canon of construction favoring the insured which is applicable to doubtful provisions "furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist. . . . To discharge the insured from the legal consequences of a failure to comply with an explicitly stipulated requirement of the policy . . . would be to vary the plain terms of the contract in utter disregard of long settled principles." *Bergholm* v. *Peoria Life Ins. Co.*, 284 U. S. 489, 492, 52 Sup. Ct. 230, 231. Under the usual policy provision that it shall become void or forfeited upon failure to pay a premium or assessment at the time stipulated, such nonpayment works a forfeiture because the terms of the contract so prescribe and a court has no power to vary the stipulations of the parties, although payment was prevented by poverty, illness, mental impairment or accident. *Pitts* v. *Hartford Life & Annuity Ins. Co.*, 66 Conn. 376, 385,

34 Atl. 95; *Worthington* v. *Charter Oak Life Ins. Co.*, 41 Conn. 372, 400; 14 R. C. L. p. 976. Conditions of a policy, performance of which at the time agreed upon "is necessary to the continued liability of the insured to perform in case of loss, such as payment of premiums, and notice of change of interest or of other insurance . . . are so essentially parts of the contract that noncompliance by the insured amounts to a breach of the agreement, which discharges the insurer from further liability . . . even though the insanity or other disability of the insured made performance [by him] wholly impossible." Vance, Insurance (2d Ed.) p. 116; *Wheeler* v. *Connecticut Mutual Life Ins. Co.*, 82 N. Y. 543; *Pitts* v. *Hartford Life & Annuity Ins. Co.*, supra; *New York Life Ins. Co.* v. *Alexander*, 122 Miss. 813, 85 So. 93, 15 A. L. R. 314, and cases in note, p. 318; 4 Cooley, Insurance, p. 3671.

The overwhelming weight of authority is that if, in a policy providing for issuance of a paid-up policy for such amount as the reserve on the policy will purchase, or the like, it is expressly stipulated that application therefor shall be made within a specified time after default in payment of premium, time is to be regarded as of the essence of the contract and the paid-up policy must be demanded within the time limited. In addition to the principle that the contract must be construed according to its unambiguous terms, considerations supporting this view include that it is important that insurers should know the extent and nature of their liabilities, and should not be left indefinitely in uncertainty pertaining thereto and perhaps exposed to disadvantages due to lapse of time. Many cases are collected in a note in 8 L. R. A. (N. S.) p. 194. The same rule has been applied where the policy provided that upon failure to pay premiums the insured should be entitled, at his option exercised within a specified

time, to have either extended insurance or a paid-up policy, otherwise the policy should be void. *Knapp* v. *Homeopathic Mutual Life Ins. Co.,* 117 U. S. 411, 6 Sup. Ct. 807, 29 L. Ed. 960.

However, while there is a decided conflict in the decisions, the weight of authority is to the effect that under policies requiring notice of the facts constituting a loss thereunder to be given within a specified period, failure to give the notice within that time is excused if the failure is due to insanity or other disabling cause, provided such notice is given within a reasonable time, or within the time stipulated, after termination of the disabling circumstances. *Haskell* v. *Eagle Indemnity Co.,* 108 Conn. 652, 656, 144 Atl. 298; Vance, Insurance (2d Ed.) p. 116; *Comstock* v. *Fraternal Accident Asso.,* 116 Wis. 382, 93 N. W. 22; note, 54 A. L. R. p. 611 *et seq.; Rhyne* v. *Jefferson Standard Life Ins. Co.,* 199 N. C. 419, 154 S. E. 749; *Pfeiffer* v. *Missouri State Life Ins. Co.,* 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600, and cases in note, p. 611 *et seq.* The distinction, recognized by the cases so holding, between the two classes of conditions, appears to be that those whose performance at the time agreed upon is necessary to the continued liability of the insurer to perform in case of loss, such as payment of premiums, and notice of change of interest, or of other insurance, are so essentially parts of the contract that noncompliance by the insured amounts to a breach which discharges the insurer from further liability and it is immaterial what may be the cause of the breach, while those that stipulate for the doing of some act by the insured after the loss has taken place, such as giving notice and proofs of loss, are regarded in the nature of conditions subsequent and the forfeiture of a right which became vested upon the occurrence of the loss by reason of such conditions in the nature of a penalty,

and more liberality may be and is exercised pertaining thereto. Vance, Insurance (2d Ed.) p. 116; *McNally* v. *Phœnix Ins. Co.*, 137 N. Y. 389, 397, 33 N. E. 475. The latter principle was applied in *Pfeiffer* v. *Missouri State Life Ins. Co.*, supra, in excusing, because of insanity, failure to give notice of disability entitling the insured to waiver of further payment of premiums, on the theory that notice of such disability was analogous to proof of death operating upon the contract subsequent to the fact of loss. *New England Mutual Life Ins. Co.* v. *Reynolds*, 217 Ala. 307, 116 So. 151, 59 A. L. R. 1075, reached an opposite result, holding in effect (p. 310) that the purpose in invoking the clause waiving premium payments because of disability was to keep the policy alive by excusing the payment of premiums, and akin to such payment, rather than the performance of a condition subsequent to the accrual of a loss or liability. In *Rhyne* v. *Jefferson Standard Life Ins. Co.*, supra, the policy provided that upon proof of total and permanent disability of the insured the insurer would thereafter pay not only the premiums but a specified monthly income to the insured, and it was ruled that failure, due to insanity, to give notice and proof of disability within the time specified did not defeat recovery, it being held that the incapacity producing the failure was the very thing insured against.

Cases bearing directly upon the effect of insanity on the exercise of options analogous to those here are few and conflicting, and involve facts essentially different from the present case. *Marti* v. *Midwest Life Ins. Co.* (1922) 108 Neb. 845, 189 N. W. 388, 29 A. L. R. 1507, resembled this case in that the insured became insane while the policy was in force under a previous premium payment, continued in that condition until her death after another premium had become due and re-

mained unpaid, and the beneficiary, his wife, was not aware of the existence of the policy until some time after his death. Thereupon she claimed the benefit of an option, under the policy, in case of permanent disability of the insured, to retain it as a paid-up policy, and it was held that under the circumstances the option might be exercised by presenting the required proof within a reasonable time. However, the policy prescribed no time limit within which the option should be exercised and the absence of such a limitation apparently was an essential element in the conclusion reached. See 3 Couch, Insurance, p. 2084. The policy involved in *Tyson* v. *Equitable Life Assurance Society* (1916) 144 Ga. 729, 87 S. E. 1055, contained a clause providing that, on nonpayment of premium, there would be granted, without action on the part of the insured, paid-up life insurance for an amount dependent upon the period during which premiums had been paid or, in lieu thereof, at the option of the assured, (1) the cash surrender value, or (2) upon surrender of the policy within thirty days from default in payment of premium or, with satisfactory evidence of good health, within one year, a paid-up term policy for the full amount for the time stated in a table included in the policy. The insured became insane before a premium was in default and so remained until his death, a premium falling due and being unpaid in the meantime. The administrator of his estate claimed the right to elect the option for a paid-up term policy and brought suit on that basis. It was held that the option was not exercisable, without proof of good health, after the thirty days, "notwithstanding the insanity of the insured during such time," (citing *Balthaser* v. *Illinois Life Ins. Co.*, 33 Ky. L. Rep. 283, 110 S. W. 258; *Wheeler* v. *Connecticut Mutual Life Ins. Co.*, 82 N. Y. 543) and that the administrator could

not elect this option, although within the year, because the insanity of the insured rendered him uninsurable, he not being in good health.

In *Walters* v. *Mutual Life Ins. Co.* (1933) (C. C. A.) 64 Fed. (2d) 178, it was provided in the policy that if it should not, within three months after default in payment of premium, have been surrendered for its cash value or for continued insurance, the insurance would automatically become paid-up endowment, as specified in a third option. The case appears to hold that the insurer while sane, or his guardian while he was insane, might take action within a reasonable time to elect one of the options other than that which automatically became effective, but that they had failed to do so. However, as in the *Marti* case, the policy contained no such express provision as is in the policy now in question, that written request for the option selected should be filed within three months after the due date of premium, and the opinion recites with apparent approval the excerpt from *Bergholm* v. *Peoria Life Ins. Co.,* concerning disregard of explicit policy stipulations which we have already quoted. Text writers appear to have accepted as the true rule that adopted in the *Tyson* case—that insanity during the period prescribed for exercise of such an option does not operate to suspend the running of that time or extend the period, or change the rule that the option must be exercised within the designated period. 3 Couch, Insurance, p. 2081; 37 C. J. p. 446.

In our view the rule applicable to the facts alleged in the complaint is that last above stated. As we have seen, it is established that courts have no power to ignore or vary express stipulations of the parties as to the effect of nonpayment of premiums or other conditions essential to continuance of the policy and continued liability of the insurer for future losses—al-

though more latitude is exercised as to conditions pertaining to losses and liability already accrued. The options here involved belong to the former class, the purpose being to keep the policy in force, in a modified form, notwithstanding failure to pay the agreed premium, and steps taken by or on behalf of the insured for the purpose of exercising the chosen option are clearly not akin to notice of a loss or a disability insured against, already accrued, to which the more liberal rule applies. There is not involved a forfeiture of the policy in the absence of exercise of the option, as in *Knapp* v. *Homeopathic Mutual Life Ins. Co.*, supra, in which, notwithstanding, the rule was applied, or such other forfeiture or prejudice to the insured as might incline to indulgences in his favor. Under the policy provisions, if the insured failed to elect, as and within the time prescribed, from among the three options afforded, one of them (b) automatically became effective to continue the policy as paid-up for a reduced amount. It is an open question as to which of the options would be most advantageous to the insured, as she was situated at the time specified for their exercise. It appears by reference to the application made part of the complaint that the insured was forty years of age during the election period and, as stated in the memorandum of decision, "she might well have elected the very option [b] which took effect automatically, as the paid-up term insurance [c] would continue for a period of approximately nine years only and she might very possibly have anticipated a long life," although it subsequently developed, through her early death, that insurance for a larger amount for a limited term only would have been more profitable. To hold that an insured and his beneficiary might allow the expressly specified time to expire and the automatic provision to take effect, and continue to

stand silent until either the death of the insured or his continued life determined which option was the more favorable, and then choose it, "certainly would not accord with the principles of equity or justice." *Walters* v. *Mutual Life Ins. Co.*, supra.

There is no error.

In this opinion the other judges concurred.