## MORRIS RAFFEL ET AL. *v.* TRAVELERS INDEMNITY COMPANY

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued June 1—decided June 29, 1954

*John P. Hodgson,* for the plaintiffs.

*Frederick C. Maynard, Jr.,* with whom, on the brief, was *Warren Maxwell,* for the defendant.

BALDWIN, J. This case has been reserved for advice upon the question whether a certain policy of insurance, issued by the defendant to the plaintiffs to cover their Chevrolet truck, insured their liability for damages arising out of injuries sustained by Phyllis Rindfleisch when a roll of linoleum, delivered by the plaintiffs in their truck to the Rindfleisch home and left standing upright near the front door of the house, fell and injured her.

The stipulation of facts may be abbreviated as follows: The plaintiffs owned and operated a department store in Bristol. They had a Chevrolet truck which they used to make deliveries of merchandise to their customers. The defendant, an insurance company, had issued two policies of insurance to the plaintiffs. One was described as an owners', landlords' and tenants' liability policy and was issued to cover the premises occupied by the store and certain store operations. It insured the plaintiffs, among other things, against liability for personal injuries arising out of the handling of goods sold by the insured if the accident occurred after the insured had relinquished them to others away from the premises of the insured. The limit of this policy was $20,000. The other policy, hereinafter referred to as the automobile policy, purported to cover the plaintiffs' one-half ton pickup Chevrolet truck and to insure the plaintiffs against liability for bodily injuries up to the limit of $50,000. In this policy, the defendant agreed "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person, caused

by accident and arising out of the ownership, maintenance or use" of the truck. The use of the truck was stated to be "commercial," and a condition of the policy provided that "[u]se of the automobile for the purposes stated includes the loading and unloading thereof."

On April 4, 1952, Martha Rindfleisch, the mother of Phyllis, a child ten years of age, inquired of the plaintiffs at their store concerning the purchase of linoleum for her home in Farmington. The dimensions of the floor space to be covered were not known, and it was agreed that the plaintiffs would send to the Rindfleisch house a roll of linoleum which would contain more than was needed, that the amount required would be cut from the roll and that the plaintiffs would call and pick up the remainder and return it to the store. On April 8, the plaintiffs sent their driver to deliver the roll of linoleum. It was approximately six feet long and weighed between 200 and 300 pounds. Upon arrival at the Rindfleisch home, the driver backed the truck up to the steps leading to the door of a glassed-in porch. He slid the roll from the bed of the truck onto a concrete landing at the top of the steps, where the roll rested in a horizontal position. Because of its weight the driver was unable to move it farther. He secured the assistance of a neighbor and with his help lifted the roll up to the porch level, slid it across the porch floor, and stood it upright against the wall near the front door of the house.

Two or three days later the plaintiffs were advised by Otto Rindfleisch, the father of Phyllis, that about 4:30 p.m. on the day the roll was delivered it had fallen upon Phyllis and injured her. He claimed that the driver had been negligent in leaving the roll in such a manner that it was likely to fall upon some-

one. Phyllis' injuries were so serious as to cripple her permanently. Large sums were spent for her care and treatment. Counsel employed in her behalf threatened to sue the plaintiffs for $200,000 damages. The claim was settled before suit by the payment of $35,000. The defendant denied any liability on its automobile policy. It contributed $20,000, the limit of its liability on the owners', landlords' and tenants' policy, toward the settlement. The plaintiffs paid the balance of $15,000 and reserved their rights to proceed against the defendant on the automobile policy to recover this sum.

The determinative issue is whether the automobile policy should be construed to insure the plaintiffs against the liability imposed upon them by the claimed negligent act of the driver of the truck in leaving the roll of linoleum so that it fell and injured Phyllis. In short, did the accident occur while the driver was "unloading" the truck within the terms and conditions of the policy?

If the terms of an insurance policy are plain and unambiguous, they are to be accorded their natural and ordinary meaning. *Komroff* v. *Maryland Casualty Co.,* 105 Conn. 402, 406, 135 A. 388. If they are not, then the construction most favorable to the insured is to be adopted. *Ross* v. *Protective Indemnity Co.,* 135 Conn. 150, 152, 62 A.2d 340; *Porto* v. *Metropolitan Life Ins. Co.,* 120 Conn. 196, 200, 180 A. 289. When the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. *Dickinson* v. *Maryland Casualty Co.,* 101 Conn. 369, 379, 125 A. 866; *King* v. *Travelers Ins. Co.,* 123 Conn. 1, 4, 192 A. 311.

It is to be noted that in the policy in the instant

case the defendant agreed to pay on behalf of the insured all sums which the insured became obligated to pay as damages because of bodily injury caused by accident and "arising out of the ownership, maintenance or use of the automobile" described in the policy. Some courts have construed these words as being sufficiently broad to encompass the loading or unloading of the insured vehicle. *Red Ball Motor Freight, Inc.* v. *Employers Mutual Liability Ins. Co.,* 189 F.2d 374, 377; *Schmidt* v. *Utilities Ins. Co.,* 353 Mo. 213, 218, 182 S.W.2d 181; *Panhandle Steel Products Co.* v. *Fidelity Union Casualty Co.,* 23 S.W.2d 799, 802 (Tex. Civ. App.). We, however, are not called upon in the present case to decide whether they should be given that interpretation. The policy goes further than to insure the plaintiffs against liability arising out of the "use" of the truck. The purposes of use are defined as "commercial," and a condition of the contract states that the use includes "loading and unloading." The effect of this language is to extend the coverage afforded by the language "ownership, maintenance or use," to include the acts of loading and unloading incident to the use of the vehicle. *Ferry* v. *Protective Indemnity Co.,* 155 Pa. Super. 266, 269, 38 A.2d 493; *Pacific Automobile Ins. Co.* v. *Commercial Casualty Ins. Co.,* 108 Utah 500, 511, 161 P.2d 423; *American Oil & Supply Co.* v. *United States Casualty Co.,* 19 N.J.Misc. 7, 11, 18 A.2d 257; 2 Richards, Insurance (5th Ed.) p. 966.

Although the question is one of first impression in this state, the federal courts and many state courts have construed this and like language as applied to a wide variety of facts. We had occasion to pass upon the terms "arising out of the use of the automobile classified as 'pleasure and business,' while in or upon, entering or alighting from" it, in *Ross* v.

*Protective Indemnity Co.,* 135 Conn. 150, 151, 62 A.2d 340. In that case, passengers had stepped out of the car and had gone to the rear of it, where they had been standing for some minutes when they were injured. We held that they were not in, upon, entering or alighting from the automobile within any reasonable meaning that could be ascribed to those terms. The case, however, offers no precedent to control the decision of the question now before us. The term "alighting from" as applied to persons is quite different from "unloading" as applied to merchandise.

Two doctrines have been evolved concerning the construction to be given to the phrases "arising out of the...use" and "loading and unloading." *Wagman* v. *American Fidelity & Casualty Co.,* 304 N.Y. 490, 494, 109 N.E.2d 592. By the more narrow construction, referred to as the "coming to rest" doctrine, "unloading" has been held to embrace only the operation of taking the goods from the vehicle to a place of rest out of the vehicle. Only that which occurs in this initial process is covered. *American Casualty Co.* v. *Fisher,* 195 Ga. 136, 140, 23 S.E.2d 395; *St. Paul Mercury Indemnity Co.* v. *Standard Accident Ins. Co.,* 216 Minn. 103, 106, 11 N.W.2d 794; *Jackson Floor Covering, Inc.* v. *Maryland Casualty Co.,* 117 N.J.L. 401, 403, 189 A. 84; *Zurich General Accident & Liability Ins. Co.* v. *American Mutual Liability Ins. Co.,* 118 N.J.L. 317, 320, 192 A. 387; *Ferry* v. *Protective Indemnity Co.,* 155 Pa. Super. 266, 269, 38 A.2d 493; *Stammer* v. *Kitzmiller,* 226 Wis. 348, 352, 276 N.W. 629.

The majority of the courts have adopted a broader construction and have held that the phrases in question comprehend not only the immediate transfer of the goods from the truck but also the operation of moving them from the vehicle to the place where

they are to be ultimately delivered. This is referred to as the "complete operation" doctrine. Any occurrence during, or arising out of, this process is covered. *Red Ball Motor Freight, Inc.* v. *Employers Mutual Liability Ins. Co.*, 189 F.2d 374, 377; *Maryland Casualty Co.* v. *Dalton Coal & Material Co.*, 184 F.2d 181, 182; *Connecticut Indemnity Co.* v. *Lee*, 168 F.2d 420, 425; *Maryland Casualty Co.* v. *Cassetty*, 119 F.2d 602, 604; *Maryland Casualty Co.* v. *Tighe*, 115 F.2d 297, 298; *Schmidt* v. *Utilities Ins. Co.*, 353 Mo. 213, 218, 182 S.W.2d 181; *State ex rel. Butte Brewing Co.* v. *District Court*, 110 Mont. 250, 256, 100 P.2d 932; *Wagman* v. *American Fidelity & Casualty Co.*, 304 N.Y. 490, 494, 109 N.E.2d 592; *Pacific Automobile Ins. Co.* v. *Commercial Casualty Ins. Co.*, 108 Utah 500, 511, 161 P.2d 423; *American Employers' Ins. Co.* v. *Brock*, 215 S.W.2d 370, 373 (Tex. Civ. App.); *Bobier* v. *National Casualty Co.*, 143 Ohio St. 215, 220, 54 N.E.2d 798; *London Guarantee & Accident Co.* v. *C. B. White & Bros., Inc.*, 188 Va. 195, 205, 49 S.E.2d 254; 2 Richards, Insurance (5th Ed.) p. 969; note, 160 A.L.R. 1259. The rationale of the "complete operation" doctrine, which we hold is the more just and understandable of the two, is that the facts of each case must establish a causal relationship between the "use" and "unloading" of the vehicle and the injuries inflicted.

These plaintiffs insured their premises and their truck in connection with their business operations. It is not necessary for us to decide whether the defendant was correct in its position that the owners', landlords' and tenants' liability policy covered this accident. Its conduct in paying the full limit of the liability on that policy indicates an intent on its part that the terms of the automobile policy should not cover the plaintiffs' liability on the claim of

Phyllis Rindfleisch. It can be argued also that the plaintiffs presumably would not purchase double insurance and that they, too, expected the owners', landlords' and tenants' policy to cover them. But both policies were in the same company, and the most that can be said on this point as regards the intention of the plaintiffs is that they expected that one or the other of the policies would cover all their business operations. The question, however, is not what the defendant intended or the plaintiffs expected but rather what intent is expressed in the language used in the automobile policy. It was certainly within the contemplation of both the insurer and the plaintiffs that the truck would be used for commercial purposes in connection with the plaintiffs' department store. The vehicle is described in the automobile policy as a "½-ton Pickup Truck." In the normal course of making deliveries, the merchandise delivered is customarily placed where the purchaser can most conveniently get it and use it. In this instance, that place was at the front door of the Rindfleisch home. A continuous operation was anticipated. The linoleum was to be delivered, a portion used and the rest picked up by the plaintiffs and returned to the store. It is reasonable to assume that the operation of unloading did not end until the linoleum was placed where it could be used by its purchaser. If the driver, in carrying forward this mission, was negligent in leaving it where it could, and did, cause injury, that negligent act was a part of the operation of unloading the truck and had a direct causal relation with the truck and the unloading operation. Such an interpretation of the contract requires no strained construction and does no violence to the fair meaning of the terms used.

We hold that the automobile policy insured the plaintiffs against liability for the claim made in behalf of Phyllis Rindfleisch, and we answer "Yes" to the question propounded.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.