## EDGERTON AND SONS, INC. *v*. MINNEAPOLIS FIRE AND MARINE INSURANCE COMPANY

BALDWIN, O'SULLIVAN, WYNNE, DALY and PHILLIPS, Js.

Argued June 16—decided July 29, 1955

*David R. Lessler,* for the appellant (plaintiff).

*Joseph M. Brandon,* with whom, on the brief, were *David E. FitzGerald, Jr., Bernard Insler* and *Gordon R. Raynor,* for the appellee (defendant).

WYNNE, J. In this action a declaratory judgment was sought as to the interpretation of an insurance policy clause. The plaintiff is a common carrier engaged in the transportation of general merchandise. It maintained a fleet of twelve trucks of various sizes, types and shapes in the conduct of its business. In an effort to protect itself from liability to shippers for loss or damage to merchandise in transit, it procured, on June 20, 1951, an insurance policy, called a motor vehicle cargo policy, from the defendant. While the action sought an interpretation of the clause as to which the parties differed, the plaintiff was attempting to recover $4974.50 which it had been obliged to pay a shipper for the damage which a lathe suffered while it was being transported. The policy excepted certain specified hazards. The court found the issues for the defendant and entered judgment for it. From that judgment this appeal has been taken.

The policy in question covered "the legal liability

of the Assured as a carrier . . . for direct loss or damage from perils . . . specified, on shipments of lawful goods . . . while loaded for shipment on and/or in transit" on the vehicle described. The pertinent peril or risk specified was "[c]ollision, i.e., accidental collision of the vehicle with any other automobile, vehicle or object." The policy contained a provision which excepted from insurance coverage the legal liability of the assured for "[l]oss or damage caused by the vehicle coming in contact with any portion of the roadbed, curbing, or any stationary object while backing for loading or unloading purposes, or rails or ties of street, steam or electric railways, [and] for loss or damage caused directly or indirectly by the load or any portion thereof coming into contact with any other object unless the carrying vehicle also collides with such object."

The finding may be stated in essential substance as follows: On September 17, 1951, Manning, Maxwell and Moore engaged the plaintiff to transport a Bullard vertical turret lathe owned by it from the plant of J. L. Lucas, machine repairers in Bridgeport, to its own plant in Stratford. On that date, the plaintiff directed an employee, Joseph Yorio, to perform the service, and it dispatched a 1949 Mack ten-wheel platform truck for the purpose. The lathe was placed on wooden skids, extending two feet from each side, and thus seated, was hoisted in place upon the truck. The lathe was covered by a canvas tarpaulin belonging to the plaintiff and used by it on occasion in transporting merchandise. The lathe was the only cargo being carried. It extended from six to eight feet above the truck platform, and somewhat above the cab of the vehicle. The canvas tarpaulin was not fitted for use on the particular truck; it was usable on any of the plaintiff's trucks. While

en route to its destination and laden as described, the truck was proceeding along East Main Street in Stratford, approaching a railroad bridge which spanned the street at that point. The driver of the truck satisfied himself that he could safely drive under the bridge with sufficient clearance for the load. As he drove under the bridge, he pulled to his right to avoid colliding with a truck which, coming from the opposite direction, was partly on his side of the road. The right front wheel of the truck thereupon struck a cement culvert located off the edge of the right-hand shoulder of the highway. The driver brought the truck to a stop. He intended to back up, but his foot inadvertently slipped off the clutch pedal and the truck went forward again. As a result the right rear tandem wheel mounted the culvert, the truck bounced up and the top of the lathe came in contact with the under surface of the bridge. The upper assembly of the lathe was thereby snapped off and damaged. No part of the truck came in contact with the under surface of the bridge.

From the foregoing, the trial court concluded that the load the plaintiff was carrying was damaged by contact with the under surface of the bridge, that the truck itself did not collide with the bridge, and that consequently the damage to the lathe was caused by a peril excepted from coverage by the noninsuring clause heretofore stated. The determination of the case requires an interpretation of this clause.

When a term in a policy of insurance is ambiguous, it will be liberally construed in favor of the insured. *Ross v. Protective Indemnity Co.,* 135 Conn. 150, 152, 62 A.2d 340; *Porto v. Metropolitan Life Ins. Co.,* 120 Conn. 196, 200, 180 A. 289; *Morehouse v. Employers' Liability Assurance Corporation,* 119

Conn. 416, 426, 177 A. 568. The loss in the instant case was covered by the general insuring clause of the policy. *C. & J. Commercial Driveway, Inc.* v. *Fidelity & Guaranty Fire Corporation*, 258 Mich. 624, 629, 242 N.W. 789; *Jorgenson* v. *Girard Fire & Marine Ins. Co.*, 229 Minn. 48, 55, 38 N.W.2d 209; *Gould Morris Electric Co.* v. *Atlantic Fire Ins. Co.*, 229 N.C. 518, 520, 50 S.E.2d 295; *Bucks County Construction Co.* v. *Alliance Ins. Co.*, 162 Pa. Super. 153, 158, 56 A.2d 338. The decisive question is whether, under the circumstances of this case, the damage to the lathe arose from a peril or risk excepted from coverage under the noninsuring clause of the policy.

While the striking of the load against the bridge can be said to have been the immediate cause of the damage to the lathe, all other causes are not thereby excluded. In the determination of what caused the loss or damage, the cause or agency which is nearest in time or place to the result is not necessarily to be chosen. The active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source is the proximate cause. *Lynn Gas & Electric Co.* v. *Meriden Fire Ins. Co.*, 158 Mass. 570, 575, 33 N.E. 690. "The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. 2 Bl. Rep. 892 .... Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening . . .?" *Milwaukee & St. P. Ry. Co.* v. *Kellogg*, 94 U.S. 469,

474, 24 L. Ed. 256. In the determination whether a loss is within an exception in a policy, where there is a concurrence of two causes, the efficient cause—the one that sets the other in motion—is the cause to which the loss is to be attributed, though the other cause may follow it and operate more immediately in producing the disaster. 6 Couch, Insurance, p. 5303; *The G. R. Booth,* 171 U.S. 450, 460, 19 S. Ct. 9, 43 L. Ed. 234; *Aetna Fire Ins. Co.* v. *Boon,* 95 U.S. 117, 130, 24 L. Ed. 395; *Brown* v. *St. Nicholas Ins. Co.,* 61 N.Y. 332, 337; 2 Richards, Insurance (5th Ed.) § 275, p. 925; Vance, Insurance (3d Ed.) p. 917. In the case at bar, the predominating efficient cause was the truck's coming into contact with the culvert. This caused the truck to rise up with its load so that a part of the load hit the overhead bridge, thus causing the damage. The noninsuring clause does not remove the coverage afforded by the general insuring clause.

The question whether the defendant "is liable upon [the] policy up to the sum of $10,000 for any sums that the plaintiff shall become obligated to pay as damages as a result of the damage to the lathe in said collision" should be answered Yes.

There is error, the judgment is set aside and the trial court is directed to enter judgment in accordance with this opinion.

In this opinion BALDWIN, DALY and PHILLIPS, Js., concurred.

O'SULLIVAN, J. (dissenting). It is an accepted rule of construction that an ambiguous provision in an insurance policy will be liberally construed in favor of the insured. *Raffel* v. *Travelers Indemnity Co.,* 141 Conn. 389, 392, 106 A.2d 716. But the existence of the rule is not a license to the court to

declare ambiguous what is perfectly clear. *Mendelsohn* v. *Automobile Ins. Co.*, 290 Mass. 228, 230, 195 N.E. 104; *Barish-Sanders Motor Co.* v. *Fireman's Fund Ins. Co.*, 134 Neb. 188, 191, 278 N.W. 374; *Hamilton Trucking Service, Inc.* v. *Automobile Ins. Co.*, 39 Wash. 2d 688, 692, 237 P.2d 781. It is unnecessary to construe the obvious. Nor does the rule authorize the court, even when the policy is ambiguous, to distort the contractual provision in question and, by giving it a meaning not intended by the parties to the contract, cast upon the insurer a liability which it has not assumed. *Porto* v. *Metropolitan Life Ins. Co.*, 120 Conn. 196, 200, 180 A. 289; *Komroff* v. *Maryland Casualty Co.*, 105 Conn. 402, 406, 135 A. 388. A court should be most diligent in seeing that an insurer does not escape liability for a risk which it has accepted and for which it has been paid a premium. What the majority are doing, however, is extending the liability of this defendant beyond the terms of its agreement. *Miller Bros. Construction Co.* v. *Maryland Casualty Co.*, 113 Conn. 504, 513, 155 A. 709; *Standard Fur Cutting Co.* v. *Caledonian Ins. Co.*, 113 Conn. 108, 113, 154 A. 153. To hold, as they do, that the lathe collided with the culvert stretches facts beyond their reality. This no more occurred than did the carrying vehicle collide with the bridge. *Jenrette Transport Co.* v. *Atlantic Fire Ins. Co.*, 236 N.C. 534, 539, 73 S.E.2d 481. The majority, it seems to me, have reached an erroneous conclusion.