[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action against defendants ITT Hartford Insurance (hereinafter The Hartford); Robert Grover,[1] an insurance agent; and his agency, Schoolside Insurance. The action is brought by plaintiff Ernest J. Fontanella, d/b/a Fontanella Distributors.
Mr. Fontanella is a wholesale beer and beverage distributor. His office and warehouse are located at 27 Cooper Street, Meriden, Connecticut. Starting in January 1993, Mr. Fontanella's business was insured by The Hartford. This included coverage for property, business liability, workers' compensation, and for his trucks. The policy was obtained from Robert Grover, agent for Schoolside Insurance.
In November of 1993, Mr. Fontanella complained to Mr. Grover that his premiums had been higher than he had anticipated. Mr. Fontanella testified that Mr. Grover's response was that he should not pay his premium for November and December as Mr. Fontanella would be receiving a rebate on his workers' compensation coverage in approximately the amount of these two payments. Mr. Grover told Mr. Fontanella he wanted to keep him as CT Page 2478 a customer and would secure a more favorable rate even if he had to cut his commission. Grover said he had quotes from several other companies, particularly a Maryland company.
In early December, Mr. Fontanella got a cancellation notice from The Hartford, effective December 18. When he called Mr. Grover, he was told not to worry, that these notices were automatically generated by computer, and that Grover was still negotiating for a new policy.
In early December, Grover had given Mr. Fontanella a 1994 Hartford policy. After speaking to Grover, Mr. Fontanella agreed to continue with The Hartford on Grover's assurance that he would get a rate equal to, or better than, the Maryland policy. Mr. Fontanella believed this because Grover had offered to cut his commission and because Grover had said he was talking to the underwriters. Grover said he would come to get a check when the price was firm.
One or two days before the expiration date[2] of the original policy Mr. Fontanella called Grover to be sure he would be covered. He was assured that he was. When the renewal date passed and Grover had still not asked for the premium, Mr. Fontanella assumed this was because negotiations were ongoing.
In late December or early January, Mr. Fontanella noticed some damage on a corner of a column in his warehouse — the only column in the building. He surmised that this was the result of a hit with a forklift. The damage consisted of a chunk out of the cinder block about one and one-half feet above the floor.
Mr. Fontanella testified that Grover was scheduled to pick up the check for the premium on February 1. That same day, it was discovered that the column was leaning and the roof was coming down. Mr. Fontanella called Mr. Grover and a welder. When Grover arrived, Mr. Fontanella said he hoped he was covered. Mr. Grover responded, "of course you are", and told Mr. Fontanella to "do what you have to do." The welder told Mr. Fontanella that the problem was beyond any help he could give and told him to call a contractor. No one came from The Hartford on this day. Mr. Fontanella testified that he learned later that The Hartford had instructed Grover not to take the check after they learned of the loss. Nevertheless, Grover later brought a contractor to evaluate the loss. Upon The Hartford's denial of coverage, this action was filed. CT Page 2479
In summary, the plaintiff claims that he would have been covered but for the negligence of The Hartford's agent. The Hartford disclaims liability for the acts of Mr. Grover. In addition, The Hartford claims that the policy had been cancelled, and, even if it had been in effect, the loss would not have been covered under its terms.
Insofar as the issue of coverage could be dispositive of the plaintiff's claims, the court will first address that question.
The plaintiff has alleged (hence admitted) that the damage to his property constituted a "collapse." There are several references to "collapse" in the policy.[3] The first of those applicable herein appears on "Page 3 of 22" under the heading "Additional Coverages" and states:
b. Collapse
 We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:
 (1) The `specified causes of loss' or breakage of building glass, all only as insured against in this policy.
 (2) Hidden decay;
(3) Hidden insect or vermin damage;
(4) Weight of people or personal property;
(5) Weight of rain that collects on a roof; and
 (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.
 We will not pay for loss of or damage to the following types of property, if otherwise covered in this policy, under items (2), (3), (4), (5) and (6) unless the loss or damage is a direct result of the collapse of a building: CT Page 2480
 awnings; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves and docks; bench or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.
 Collapse does not include setting, cracking, shrinkage, bulging or expansion.
The exclusion portion of the policy states that:
 We will not pay for loss or damage caused by or resulting from:
 J. Collapse: Collapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the described premises, we will pay for that resulting loss or damage.
Thus, loss through collapse, and any damage resulting therefrom, is not covered unless it fits within the coverage provided under the "Additional Coverages" section quoted above.
Both plaintiff and defendant offered expert testimony as to the cause of the collapse. Plaintiff's expert, Mr. Kronberg, is a contractor who provides appraisals for fire and insurance restoration. Mr. Kronberg visited the site on the day of the collapse. He testified that there was so much snow and ice on the roof he could not safely climb up to inspect more closely. Mr. Kronberg inspected the column that had been hit by the forklift. He testified that this was the load-bearing column. When asked what the initial cause of the collapse had been, he responded that it was the hit with the forklift. He testified that the secondary cause was the snow and ice.
The Hartford's expert, Mr. Hallisey, is a structural engineer having impressive credentials. Mr. Hallisey testified that the building was not to code. He stated that the supporting column did not meet the specifications for the time the building was erected, approximately 1940. He testified that the building could have withstood four times as much weight from ice and snow had the column been to code. He further admitted the building could have withstood the load of ice and snow on the day of the collapse but for the hit with the forklift. He opined that the cause of the collapse was, first, that the building was not to code, second, the hit from the forklift, and, third, the CT Page 2481 accumulation of ice and snow on the roof, in that order.
Thus, both the plaintiff and defendant's experts are agreed that there was no single cause for the collapse. Mr. Hallisey specifically testified that the snow and ice would not have caused a collapse but for the hit with the forklift. Once could infer agreement on this point from the testimony of Mr. Kronberg.
The coverage afforded by the policy for collapse states that the collapse must be "caused only by one or more" of the enumerated factors. Clearly, a collapse "caused" by the weight of ice and snow would be covered. The weight of ice and snow coupled with any of the other enumerated factors as either primary or secondary causes would be covered. The question herein is the interpretation of the word "cause."
 In the determination whether a loss is within an exception in a policy, where there is a concurrence of two causes, the efficient cause — the one that sets the other in motion — is the cause to which the loss is to be attributed, though the other cause may follow it and operate more immediately in producing the disaster. 6 Couch, Insurance, p. 5303; The G.R. Booth, 171 U.S. 450, 460, 19 S.Ct. 9, 43 L.Ed. 234; Aetna Fire Ins. Co. v. Boon, 95 U.S. 117, 130, 24 L.Ed. 395; Brown v. St. Nicholas Ins. Co., 61 N.Y. 332, 337; 2 Richards, Insurance (5th Ed.) § 275, p. 925; Vance, Insurance (3d Ed.) p. 917.
Edgerton Sons. Inc. v. Minneapolis Fire Marine Ins. Co.,142 Conn. 669, 674, 116 A.2d 514 (1955).
Within the meaning of Edgerton, the "cause" of this collapse, in the opinion of both plaintiff and defendant's expert, was the hit with the forklift. Insofar as the weight of ice and snow is not the efficient cause of the collapse, and the hit with the forklift does not fit within any of the categories enumerated as covered, the policy does not provide coverage for this collapse, whether or not in effect.
 "`If the terms of an insurance policy are of doubtful meaning, that permissible construction which is most favorable to the insured is to be adopted; but if they are plain and unambiguous the CT Page 2482 established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deducted, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties. Komroff v. Maryland Casualty Co., 105 Conn. 402, 405, 135 A. 388.'" The rule is well recognized. Aschenbrenner v. United States Fidelity Guaranty Co., 292 U.S. 80, 84, 54 S.Ct. 590, 78 L.Ed. 1137; Dover v. Standard Accident Ins. Co., 92 N.H. 59, 60, 24 A.2d 496; Ross v. Protective Indemnity Co., 135 Conn. 150, 152, 62 A.2d 340. It was incumbent upon the plaintiff to bring herself within the express terms of the policy. Miller Bros. Construction Co. v. Maryland Casualty Co., 113 Conn. 504, 513, 155 A. 709.
Weingarton v. Allstate Ins. Co., 169 Conn. 502, 509-510,363 A.2d 1055 (1975).
The plaintiff herein has not brought himself "within the express terms of the policy" Id. Insofar as the policy would not have provided coverage, the conduct of Mr. Grover, albeit outrageous, had nothing to do with the terrible loss sustained by the plaintiff. Accordingly, the court is compelled by the evidence of the experts and applicable law to enter judgment for the defendant.
Dunnell, J.